## FRANKO v. OLSZEWSKI.

1. SPECIFIC PERFORMANCE—LIQUIDATED DAMAGES—INTENT.

A stipulation in regard to liquidated damages does not preclude a suit for specific performance unless it appears from the whole contract that it was the intention of the parties that the right to pay the stipulated sum or perform the contract should be optional.

2. SAME—LIQUIDATED DAMAGES—PENALTY.

The fixing of liquidated damages amounting to a penalty for failure to perform a contract presents no objection to specific performance.

3. SAME—TRANSFER OF LIQUOR LICENSES.

Specific performance of a contract for the sale of land, personalty thereon and for transfer of licenses for the sale of beer, wine or spirits for consumption on or off the premises will not be refused merely because the court cannot control the discretion of the liquor control commission in the matter of transferring the licenses, especially where contract merely required vendor to make application to the commission for transfers (Act No. 8, § 17, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937).

4. APPEAL AND ERROR—SPECIFIC PERFORMANCE—RESCISSION—FINDING OF COURT—EVIDENCE.

Finding that contract of which plaintiffs sought specific performance had not been rescinded or abandoned by the parties *held*, sustained by record.

5. FRAUD—INFERENCES—EVIDENCE.

Fraud will not be presumed on slight circumstances, or lightly inferred, but must be established by a preponderance of the evidence.

6. SPECIFIC PERFORMANCE—DIFFERENCE OF OPINION AS TO VALUE OF PREMISES—LAND CONTRACTS—TRANSFER OF LIQUOR LICENSES.

In suit for specific performance of a contract for the sale of land, personalty thereon and for transfer of licenses to sell beer, wine or spirits for consumption on or off the premises, finding of trial court, that plaintiffs were not guilty of overreaching or unfair dealing notwithstanding there was some difference of opinion as to value of such premises, is accepted and adopted by Supreme Court.

Appeal from Wayne; Webster (Arthur), J. Submitted November 7, 1946. (Docket No. 51, Calendar No. 43,467.) Decided January 6, 1947.

Bill by Peter Paul Franko and wife against Anthony Olszewski and wife for specific performance of an agreement to sell a business. Decree for plaintiffs. Defendants appeal. Affirmed.

*Kelly, Kelly & Kelly,* for plaintiffs.

*Roy F. Andes* and *Ferris H. Fitch,* for defendants.

BUSHNELL, J. Plaintiffs Peter Paul Franko and Rosalie Marie Franko, his wife, on November 22, 1943, entered into a written agreement with defendants Anthony Olszewski and Mary Olszewski, his wife, for the purchase of real property located in the city of Detroit, described as:

"Lot numbered 9 of Alfred M. Low's subdivision of lot 4 of Christopher Markey's Estate, P. C. 60 and 719, Detroit, as recorded in liber 31, page 17 of plats, Wayne county records," together with a "class 'C' State of Michigan liquor license #2170 and a S.D.M. license, and the following described fixtures and stock located on the first floor of 6874 St. John St., Detroit, Michigan, to-wit: 10 tables, 40 chairs, one front bar, one back bar, one National cash register, 2 electric fans, one radio, one beer box. All stock of goods on the bar and all other fixtures located at the said premises except one ice box, and the furniture of the sellers which is located on the second floor of the premises."

The licenses mentioned were in the name of Mary Olszewski, who agreed to transfer them to Rosalie Marie Franko. The agreement provided that, in the event such license transfers were not approved, the agreement would be considered null and void, and the deposit money refunded in full to the Frankos. The transaction was to be closed within 10 days after final approval of the license transfers by the liquor control commission.

Subsequently plaintiffs tendered to the defendants the balance due under the terms of the agreement, which tender was refused. A few days later plaintiffs filed a bill of complaint seeking specific performance of the agreement, possession of the property described therein, and an accounting for profits derived from the operation of the tavern in question.

Defendants took the position that the liquor control commission had refused to transfer the licenses and, therefore, plaintiffs were not entitled to equitable relief.

The proofs disclose that on December 3, 1943, the liquor control commission received a letter from Mary Olszewski, reading as follows:

"Regarding class C license 170 of Mary Olszewski, I wish to inform you that an application for transfer of the above license to Rosalie Marie Franko was filed with your office. I have since changed my mind about selling the business, and will appreciate it if you would not issue the transfer, and call the whole transaction off."

On January 3, 1944, the commission wrote Rosalie Franko as follows:

"This will acknowledge receipt of your letter of December 27, 1943, requesting the reason for the delay of transfer of class C and SDM license from Mary Olszewski, 6874 St. Johns street, Detroit, to yourself. Inasmuch as we received a letter from Mary Olszewski requesting that the above transfer be cancelled, further action cannot be taken on the above request."

The trial judge stated that, according to the pre-trial statement, the defendants admitted refusing specific performance and claimed the agreement was secured through fraud and overreaching. Defendants also insisted that the agreement was rescinded and abandoned when plaintiffs refused to purchase liquor in storage at its inventory value, according to the terms of the agreement.

The trial court granted specific performance and entered a decree requiring Mary Olszewski to "make application forthwith in the manner and form as required by the liquor control commission of the State of Michigan, for the purpose of transferring to said plaintiff Rosalie Marie Franko all of the right, title and interest of said defendant Mary Olszewski in class 'C' State of Michigan liquor license No. 2170 and S.D.M. License issued by the liquor control commission of the State of Michigan to said defendant Mary Olszewski."

In the event plaintiffs secured transfers of the licenses, they were required to pay the clerk of the court the sum of $8,300, "plus the inventory value of all liquor in cases and stored on said premises."

The trial court retained jurisdiction in order to further adjudicate the cause in the event that the liquor control commission refused or failed to transfer the licenses in question.*

On appeal, defendants argue that plaintiffs are not entitled to equitable relief until they exhaust their legal remedies under the liquidated damage clause in the agreement. They also contend that plaintiffs' failure to qualify as transferees under the rules of the commission relieved defendants of their contract obligations. Defendants renew their arguments that the agreement was rescinded and abandoned by the parties before the institution of the suit, and that the agreement was secured by overreaching and unfair dealings on the part of plaintiffs.

Defendants' argument as to the existence of a legal remedy is predicated upon the following provision in the agreement.

"And for the true and faithful performance of all and every of the covenants and agreements above mentioned, the parties to these presents bind themselves, each unto the other, in the penal sum of the total amount of expenses suffered by the other party, as fixed and settled damages to be paid by the failing party."

As indicated by the trial judge, a like argument was presented in *Milner Hotels, Inc., v. Ehrman,* 307 Mich. 347, 356. In that case the Court said:

---

* See Act No. 8, § 17, Pub. Acts 1933 (Ex. Sess.), as amended by Act No. 281, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 9209-32, Stat. Ann. 1946 Cum. Supp. § 18,988).—REPORTER.

"A stipulation in regard to liquidated damages does not preclude a suit for specific performance unless it appears from the whole contract that it was the intention of the parties that the right to pay the stipulated sum or perform the contract should be optional. *Hedrick* v. *Firke,* 169 Mich. 549. 2 Restatement, Contracts, p. 700, § 378. Also, see authorities assembled in 32 A. L. R. 584, 98 A. L. R. 887.''

To the foregoing may be added the observations in *Decker* v. *Pierce,* 191 Mich. 64, 70:

"The rule established at an early day in Michigan was the following: Where, by the terms of a contract, a sum is mentioned as 'liquidated damages' for a nonperformance of several distinct stipulations of very different degrees of importance, and this sum is. to be payable equally on a failure to perform the least, as of that to perform the most, important or whole of them together, it is in legal effect a penalty, and not stipulated damages; and the fixing of such a penalty by the contract is no objection to specific performance. *Daily* v. *Litchfield,* 10 Mich. 29.''

See, also, *Powell* v. *Dwyer,* 149 Mich. 141 (11 L. R. A. [N. S.] 978).

Defendants' argument that specific performance cannot be decreed because the court cannot control the discretion of the liquor control commission, is of no avail in the light of *Roodvoets* v. *Anscer,* 308 Mich. 360, where an analogous situation was presented.

The defendants were required, under the terms of the agreement, to make an application to the commission for the transfer of the licenses, and the trial court's decree merely requires compliance therewith.

Defendants' contention that the agreement was rescinded and abandoned by the parties raised a

factual issue which was determined adversely to them. The record sustains the conclusion reached by the trial judge.

Fraud will not be presumed on slight circumstances, or lightly inferred, but must be established by a preponderance of the evidence. *Fahey* v. *Pell,* 310 Mich. 280; *Gardner* v. *Gardner,* 311 Mich. 615; and *Dieterle* v. *Pearll,* 312 Mich. 134.

The record does not substantiate defendants' claims of overreaching and unfair dealing. While Mary Olszewski had a limited education and was overworked and worried by her husband's physical condition, she was nevertheless able to handle business affairs adequately. She had in this instance the benefit of the advice of a real estate broker and the attorney who prepared the agreement. The selling price may have seemed inadequate to the defendants, but opinions usually differ as to the value of such properties. Notwithstanding the testimony of an expert, produced by defendants, we accept and adopt the statement of the trial judge that:

"This expert's opinion may or may not be a correct estimate of the value of the property, but when people with eyes open make a bargain, the courts are bound to enforce the agreement of the parties unless there is fraud or overreaching of some kind which nullifies the agreement they entered into. In my opinion, the discrepancy in the value is not sufficient to warrant the court in setting aside the bargain they made."

The decree is affirmed, with costs to appellees.

CARR, C. J., and BUTZEL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.