[Civ. No. 4946. Fourth Dist. Apr. 14, 1955.]

LEWIS GUERRIERI et al., Appellants, v. PHIL J. SEVERINI et al., Respondents.

Wild, Carlson & Reeve and Robert M. Barnard for Appellants.

Iener W. Nielsen and Mikio Uchiyama for Respondents.

MUSSELL, J.—This is an action for damages for breach of a contract to sell approximately 200,000 gallons of wine. Plaintiffs appeal from the judgment entered in favor of defendants and contend that the evidence does not support the trial court's finding that there was no contract entered into between the parties wherein the defendants agreed to sell to plaintiffs and plaintiffs agreed to buy the wine involved.

Plaintiffs, copartners doing business under the firm name and style of Santa Fe Vintage Company, were engaged in the business of producing, buying, bottling and marketing wine. Defendant Phil J. Severini and his wife were the owners of the Severini Winery and Distillery. On March 27, 1953, Severini had on hand about 180,000 or 190,000 gallons of wine, after taking out the lees and shrinkage, and on that date one Fritz Kyer, a wine broker, came to him and stated that he had an offer from the Santa Fe Vintage Company to purchase his wine. In this connection Severini

testified as follows: "He came to me, and he says, 'I have an offer by Santa Fe Vintage Company to buy wine for them.' He says, 'Let's offer your wine for 36¢ a gallon.' I says, 'That is all right with me providing I get my money immediately.' So he says, 'Okay.' He says, 'Let's go into the office.' So I went into the office"; that in the office he read and signed a document prepared by Kyer; that he told Kyer he wanted "cash for the entire amount immediately"; that he wanted Kyer to have Santa Fe to send a man up to gauge the tanks and give him a check for the full amount within 48 hours; that Kyer said "Okay. I will submit it to them"; that 15 minutes to half an hour later he called up Kyer and "I says, 'Have you sent that offer in yet?' And he says, 'No, but I phoned it in.' I says, 'Well, I'm coming right down to see you.' So I went down to see him. And I says, 'Fritz, I'm having trouble with my wife, domestic difficulties, and it's possible she'll take out a restraining order on me, and being as I don't want no trouble, why don't we offer them my half of the wine, and let's submit the offer that way.' He says, 'No, I can't. I already phoned it in.' I says, 'Well if that's the way it is, there's nothing we can do about it. We'll have to go through with it'"; that a week or so later he asked Kyer if he had heard anything and Kyer stated that he had not; that he then on April 24, 1953, through his attorney, wrote a letter to Kyer withdrawing his offer.

The document prepared by Kyer which Severini read and signed is as follows:

"Instructions to SEVERINI WINERY & DISTILLERY, MADERA, CALIF.

Sold To   SANTA FE VINTAGE Co
          1700 N. SPRING ST
          LOS ANGELES, CAL.

Ship Via   AS INSTRUCTED          When_____

                    Invoice No. 1733
                    Date   MARCH 27, 1953
                    LEWIS G
                    Buyer's Order No._____
                    Terms   CASH FOR ENTIRE
                            AMOUNT IMMEDIATELY.

| Packages | Commodity |
|---|---|

APPROX. 200,000 GALS SWEET WINES, ASSORTED AS FOLLOWS:
FINISHED

        60,000 GALS 100% pure muscat
        60,000     "    PORT
        30,000     "    ANGELICA
        50,000     "    SHERRY

.36¢ GAL
IN BOND, FOB TRUCK OR
CARS, WINERY, MADERA, CAL.

ALL OF THE ABOVE WINE TO BE OUT
BY AUGUST 1, 1953.

ACCEPTED: SEVERINI WINERY & DISTILLERY
By PHIL J. SEVERINI (Signed)

COMMISSION
.01¢ GAL FROM SEVERINI WINERY

FRITZ KYER
1115 SOUTH FIFTH STREET
ALHAMBRA, CALIFORNIA
By_____ "

Kyer testified that on March 27, 1953, he told Severini that he had talked to Mr. Guerrieri of the Santa Fe Vintage Company and that Mr. Guerrieri had approved the samples of Severini wine that had been sent to him and that he would take the wine, the entire lot; that the price mentioned was 36 cents a gallon and the amount mentioned was approximately 200,000 gallons; that Severini said that was okey with him and that he accepted the order. Kyer further testified that this was a cash deal and that the wine was to be paid for as soon as it was delivered; that Severini said "Well, you have Mr. Guerrieri send up his man to gauge the tanks and then we'll invoice it accordingly"; that he got in touch with Mr. Guerrieri and asked him if he wanted to do that and Guerrieri stated he would take Mr. Severini's figures and that Severini could do the gauging; that the deal was made up on March 27, 1953, but that the written order was made up and signed on March 31, 1953; that he told Severini that Guerrieri had called him and wanted a signed order; that after the order had been prepared and signed, Severini called him on the telephone and asked him if he had sent the order in to Mr. Guerrieri; that he told Severini he had

and Severini then stated that he could not deliver the wine, that "His wife had got out a restraining order against delivery of it." Kyer further testified that he acted as broker for both Mr. Severini and for the Santa Fe Company; that he communicated the written order to the Santa Fe Company after Severini signed it and informed them of its contents and terms; that Guerrieri said that he would pay for the wine in any manner Mr. Severini requested; that he told Mr. Guerrieri it was "cash for entire amount immediately" and that this was confirmed by Guerrieri.

Mr. Guerrieri testified that about a week or ten days before March 27, 1953, he had received samples of the Severini wine; that he received the written order in the mail "right after March 31"; that he wrote a letter to Kyer confirming the transaction and that on March 27, 1953, he had confirmed it by telephone.

It appears from the uncontradicted evidence herein that Kyer, as agent for the Santa Fe Vintage Company, offered in behalf of his principal to purchase approximately 200,000 gallons of wine which the defendant then had on hand; that the price to be paid therefor was 36 cents per gallon "cash for entire amount within 48 hours"; that plaintiffs agreed that Severini could gauge the wine and that they would accept his "figures"; that Kyer informed defendant Severini that Mr. Guerrieri wanted a signed order; that the order was prepared by Kyer and accepted by Severini; that Kyer informed Guerrieri of the terms of the order and that Guerrieri confirmed the order by telephone on March 27, 1953. This evidence clearly shows that a valid, binding and enforceable contract to buy and sell was executed by the parties. It further appears that within half an hour after the written order had been sent in by Kyer, Severini called him on the telephone and wanted to submit a new order; that when Kyer stated that he had telephoned the order in, Severini said "Well, if that's the case, that's all that can be done. We'll have to go through with it." No contention was made by Severini that the contract was uncertain, indefinite or that anything further was required to make it a valid and enforceable agreement. Severini stated that he would not be able to deliver the wine as agreed and under such circumstances plaintiff was not required to make immediate payment therefor in full. Moreover, we are not here concerned with excuses for nonperformance as such matters were not pleaded as a defense in the answer. (*Eucalyptus*

*Growers Assn.* v. *Orange County Nursery & Land Co.,* 174 Cal. 330, 335 [163 P. 45].) ██ ██  A contract to sell, or a sale, may be made in writing or by word of mouth, or partly in writing and partly by word of mouth, or may be inferred from the conduct of the parties, and under the statute of frauds (Civ. Code, § 1724) requiring that the contract "or some note or memorandum thereof" be in writing, the writing essential need not be a formal contract, drawn up with technical exactness or even one intended by the parties to create an obligation. (*Gibson* v. *De La Salle Institute,* 66 Cal.App.2d 609, 631 [152 P.2d 774].) ██ ██  In that case it is said, citing *Buckner* v. *A. Leon & Co.,* 204 Cal. 225, 227 [267 P. 693]:

"It has long been the rule that when parties have not incorporated into an instrument all of the terms of their contract, evidence is admissible to prove the existence of a separate oral agreement as to any matter on which the document is silent and which is not inconsistent with its terms; and that when there is a known usage of trade, persons carrying on that trade are deemed to have contracted in reference to the usage unless the contrary appears."

██  In the instant case the contract was partly oral and partly in writing, evidenced by the order of sale. Under the circumstances shown herein the document signed by Severini is a sufficient "note or memorandum of the contract." We conclude that the trial court's finding that no contract was entered into between the parties is not supported by the evidence and that the judgment based thereon is not supported by the record.

The judgment is reversed.

Griffin, Acting P. J., concurred.

Barnard, P. J., being disqualified to participate, took no part in this decision.