[Civ. No. 23651. Second Dist., Div. Two. June 30, 1959.]

Estate of GEORGE TURNER, Deceased. STATE OF CALIFORNIA, Appellant, v. UNITED STATES OF AMERICA, Respondent.

Stanley Mosk, Attorney General, John F. Hassler and Herschel T. Elkins, Deputy Attorneys General, for Appellant.

George Cochran Doub, Assistant United States Attorney General, Laughlin E. Waters, United States Attorney, Alan S. Rosenthal, Douglas A. Kahn and William A. Montgomery, for Respondent.

FOX, P. J.—This is an appeal by the State of California from a judgment which approved, allowed, and ordered to be paid a claim of $1,015.17 against the estate of George Turner, filed by the United States of America as Trustee of the Gen-

eral Post Fund[1] and objected to by the State of California, claiming the property had escheated to it by virtue of Probate Code, section 231.

The deceased, George Turner, was a veteran of the United States Armed Services. On March 7, 1954, Mr. Turner was admitted to the Veterans' Administration Hospital in Long Beach, wherein he was furnished and accepted care and treatment by the Veterans' Administration until his death, which occurred seven days later on March 14, 1954, while still a patient at said hospital. The decedent died intestate as to his personal property without having otherwise disposed of the same, and left no known surviving spouse, next of kin or heirs entitled under the laws of his domicile (State of California) to his personal property. The decedent was not a minor, nor was he incompetent or under legal disability. Upon entering the hospital, Mr. Turner executed Veterans' Administration Form 10-P-10, ''Application for Hospital Treatment or Domiciliary Care.'' This form, which the decedent signed, provided that ''I acknowledge notice of the effect of the law mentioned on the reverse side hereof.'' On the reverse side of the application the following appeared: ''NOTE—The law provides that upon the death of any veteran receiving care or treatment by the Veterans Administration in any institution leaving no widow (widower), next of kin or heir entitled to inherit, all personal property, including money or balances in bank, and all claims and choses in action, owned by such veteran, and not disposed of by will or otherwise, will become the property of the United States as trustee for the Post Fund.''

Title 38, United States Code, section 17,[2] provides in part as follows:

''. . . whenever any veteran (admitted as a veteran) shall die while a member or patient in any facility, or any hospital while being furnished care or treatment therein by the Veterans' Administration, and shall not leave surviving him any

---

[1] The General Post Fund is administered by the Veterans' Administration for the sole purpose of providing recreational and religious programs and equipment for Veterans' Administration hospital patients.

[2] The provisions of 38 U.S.C. 17-17j were reenacted with only insignificant changes, by the Act of June 17, 1957, title XIX, 71 Stat. 149. Additionally, they have been recodified in Supplement V of the 1952 United States Code and now appear as sections 3920-3929 of title 38. Since the veteran here involved died prior to the reenactment and recodification, we refer to the statute throughout this opinion as it appeared in the 1952 Code.

spouse, next of kin, or heirs entitled, under the laws of his domicile, to his personal property as to which he dies intestate, all such property, including money and choses in action, owned by said decedent at the time of death and not disposed of by will or otherwise, shall immediately vest in and become the property of the United States as trustee for the sole use and benefit of the General Post Fund. . . .

"The foregoing provisions are conditions precedent to the initial, and also to the further furnishing of care or treatment by the Veterans' Administration in a facility or hospital. The acceptance of care or treatment by any veteran admitted as such to any Veterans' Administration facility or hospital after ninety days from December 26, 1941, and as well as the continued acceptance of care or treatment . . . after said ninety days by any veteran who is then receiving the same shall constitute an acceptance of the provisions and conditions of this subchapter and have the effect of an assignment, effective at his death, of such assets in accordance with and subject to the terms and provisions of this subchapter. . . ."

The public administrator of Los Angeles County was duly appointed, qualified and acted as the administrator of the estate of George Turner, deceased, under letters of administration issued to him by the superior court of the State of California. The claim on demand of the United States of America, as trustee of the General Post Fund, pursuant to title 38, United States Code, sections 17-17j, to the personal property left by the decedent was properly served and filed with the public administrator as administrator of the estate and the clerk of the superior court in accordance with existing federal and state laws. The claim of the United States was duly allowed for payment by the public administrator and was approved by the probate commissioner. The public administrator filed his first and final account in which the amount of $1,009.80 was set up for payment to the United States of America. A supplemental account changed this amount to $1,015.17. The trial court found that a contract existed between the decedent and the United States of America that upon his death in the aforementioned hospital, intestate, and not survived by a spouse, next of kin, or heirs, all of his personal property would vest in and become the property of the United States of America as trustee for the General Post Fund.

It is appellant's contention that title 38, United States Code,

sections 17-17j, are unconstitutional in that said sections are in direct contravention of the Tenth Amendment to the United States Constitution.[3] Furthermore, it is argued that decedent did not enter into a valid contract upon which the United States could base a claim to his personal property.

Appellant's argument that section 17 is an attempt by the federal government to usurp the exclusive power of the state over the devolution of property within its jurisdiction in violation of the Tenth Amendment to the United States Constitution misconceives the nature of the statute under consideration. This statute is not an attempt to regulate and control the devolution of property, but is based upon contractual relationships. (*United States* v. *Gallagher* (S.D. Cal.), 97 F. Supp. 1014; *In re Witte's Estate*, 174 Kan. 360 [255 P.2d 1039]; *In re Gonsky's Estate*, 79 N.D. 123 [55 N.W.2d 60]; see *United States* v. *Stevens*, 302 U.S. 623 [58 S.Ct. 388, 82 L.Ed. 484]; *Mauck* v. *United States* (C.C.A. 9th), 94 F.2d 745.)

In the *Gallagher* case it was expressly held that "[t]he statute does not offend Amendment X of the U. S. Constitution. . . ." (P. 1015.) Section 17 has been successfully invoked by the United States in numerous cases other than those to which reference has already been made. (See *United States* v. *California* (N.D. Cal.), 143 F.Supp. 957; *United States* v. *Mid City Nat. Bank of Chicago* (N.D. Ill.), 121 F.Supp. 402; *United States* v. *Brown* (S.D. Cal.), 110 F.Supp. 370.)

The only question, then, is whether there was a valid contract between the decedent and the United States of America for the disposition of the personal property involved in this appeal. We are of the opinion that there was.

In order to avoid any misunderstanding, it should be pointed out from the outset that there is no claim that the decedent executed a valid will or contract to make a will in favor of the United States. The only claim is that he, by contract, agreed that his personal property would vest in the United States under certain contingencies at his death.

Not every instrument which provides for performance of its terms at or after death is testamentary in character. (*Estate of Howe*, 31 Cal.2d 395, 398 [189 P.2d 5].) "A will is dispositive; a contract promissory. A will is gratuitous;

[3]The Tenth Amendment provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

while a contract . . . requires consideration." (Page on Wills, lifetime ed., § 83, p. 179.)

The court in *In re Witte's Estate, supra,* at pages 367-368, stated: "The contention seems to be that as Witte retained dominion over his property until he died and under the contract could have given it away or disposed of it in his lifetime, or could have disposed of it by will, the only way it could have gone to the United States would be by testamentary disposition, and the contract was not executed as such. In support appellant quotes excerpts from an abstract of the briefs as shown in the American Law Reports report of *Hale* v. *Wilmarth,* 274 Mass. 186 [174 N.E. 232, 73 A.L.R. 980]. Reference to that opinion will disclose that while the court did say that an attempted *gift* of property to take effect on the death of the donor without the delivery of the property, control and dominion of which was retained by the donor during his lifetime, was invalid but that the statute of wills did not prevent an owner of property from stipulating by contract for the disposition of his property at the time of his death and that the testatrix did not make a gift, she made a contract supported by a consideration."

Contractual limitations, such as are involved in the instant case, "are expressly recognized as valid in California Probate Code, section 220, and have been repeatedly sustained as valid by California and federal court decisions. (Citations.)" (*United States* v. *Gallagher, supra,* at p. 1015; see also *Mauck* v. *United States, supra; In re Witte's Estate, supra.*) It is readily apparent from a reading of the application form which the decedent signed that he was informed of and agreed to be bound by the terms of section 17 for, having been specifically informed of the substance and effect of such section, he accepted and received care and treatment in the veterans' hospital. ▓▓▓ It is appellant's position, however, that "the so-called agreement created no obligation on the part of the decedent and was, therefore, a *nudum pactum,* an illusory agreement." While it is certainly true that during his lifetime Mr. Turner could dispose of his property in any manner he so desired or could have provided for its disposition by will, the important fact remains that he did not do so. There can be no doubt that the decedent received consideration in the form of care and treatment which was sufficient to support any agreement or undertaking on his part. Under the facts of this case, appellant's present position is untenable; the fact that the decedent reserved to himself various options or "outs"

which would operate to defeat the respondent's rights does not mean that the agreement undertaken by the decedent need not be performed at all when in fact he did not utilize such options and knowingly received the consideration tendered by the respondent.

In answer to appellant's argument, the following from Professor Williston's treatise on the law of contracts (1 Williston, Contracts, § 106, page 367 (1936 ed.)) is apposite: "If the promise on one side of a bilateral agreement is insufficient as consideration because it promises nothing detrimental to the promisor or beneficial to the promisee, though both promises are consequently invalid, yet if performance is made of the counter-promise and the performance was something detrimental to the promisor or beneficial to the promisee, the promise which was itself insufficient as consideration, thereupon becomes binding, since sufficient consideration has now been received for it, and it is no longer necessary that the promise which was insufficient as consideration should serve as such. This is because only promises need consideration. . . . Unilateral contracts must be supported by consideration only on one side. So in the case supposed, the performance which has been rendered needs no consideration though the promise to give it originally did. Since the performance has been rendered under no mistake of fact, it cannot be recovered, and being received as the consideration for a promise, that promise now becomes binding. It certainly cannot lie in the mouth of the promisor to say that since the promise, which he has made is of such slight value he will not perform it at all though he has been paid for doing so." ■ In *Hunter* v. *Sparling*, 87 Cal.App.2d 711, 725 [197 P.2d 807], the court stated in a somewhat similar situation, that "an offer too uncertain to create a bilateral contract if accepted, may, by performance by the offeree, create a unilateral contract."

■ In all of the cases referred to above where title 38, United States Code, section 17 (or its predecessor), has been applied, the contract was expressly or impliedly held enforceable yet in each case the decedent retained the same control over his personal property as he did in the instant case. Furthermore, the alleged defect of mutuality applies only to executory contracts; "it does not apply to an executed contract nor to the executed portions of a contract." (*J. A. Folger & Co.* v. *Williamson*, 129 Cal.App.2d 184, 187 [276 P.2d 645]; *Vitagraph, Inc.* v. *Liberty Theatres Co.*, 197 Cal.

694, 701 [242 P. 709].) The present agreement was wholly executed. The United States performed fully on its part and the decedent was not survived by a wife, heirs or next of kin and had not otherwise disposed of his property. Cases cited by appellant, such as *Lawrence Block Co.* v. *Palston,* 123 Cal. App.2d 300 [266 P.2d 856], simply are not applicable to the facts presented in this appeal. We therefore conclude that the agreement is not unenforceable as being illusory or lacking any required mutuality.

 Lastly, appellant argues that the agreement is not valid under California law in that it was not in writing or evidenced by a note or memorandum thereof as is required by section 1624, subdivision 6, Civil Code. (Code Civ. Proc., § 1973, subd. 6, is identical.) This section provides that an agreement which by its terms is not to be performed within the lifetime of the promisor must be in writing or there must be a note or memorandum thereof subscribed by the party to be charged. The application form executed by the decedent stated the precise terms and conditions of the agreement; the parties were designated; the time for performance was specified; and the decedent's signature appeared thereon. No more is or could be required, and far less would suffice. As stated in *Gibson* v. *De La Salle Institute,* 66 Cal.App.2d 609, at 631 [152 P.2d 774], quoting from 12 California Jurisprudence 899-900: " 'Under the statute of frauds requiring that the contract "or some note or memorandum thereof," be in writing, the writing essential need not be a formal contract, drawn up with technical exactness, or even one intended by the parties to create an obligation. Indeed, it may be inadequate as a formal contract, and may not, for instance, contain a formal and direct expression of the covenant of one of the parties. A "note or memorandum" of the contract is all that is required.' "

It sufficiently appears, therefore, that the statute in question is not violative of the Tenth Amendment to the Constitution of the United States and that a valid contract, under the laws of the State of California, was entered into by and between the decedent and the United States.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 26, 1959. Peters, J., was of the opinion that the petition should be granted.