[Civ. No. 24658. Second Dist., Div. Three. Aug. 28, 1961.]

HENRY KANEKO, Plaintiff and Appellant, v. HANKO OKUDA et al., Defendants and Appellants.

Edward S. Cooper and Ronald Harrison Cooper for Plaintiff and Appellant.

Samuel W. Blum, Arnold M. Schwartz and Merle H. Sandler for Defendants and Appellants.

VALLÉE, J.—Cross-appeals from a judgment of specific performance of a contract for the sale of corporate stock.

The judgment orders the transfer of 250 shares of common stock of Holiday Bowl, Inc., to plaintiff, 75 shares by each of the defendants Hanko Okuda, Paul Uyemura, and Harry Oshiro, and 25 shares by defendant Harley Kusumoto. Holiday Bowl, Inc., is a party defendant. Defendants appeal from the judgment and plaintiff appeals from that part of the judgment which denies specific performance against Harley Kusumoto for an additional 50 shares.

The individual defendants formed a corporation named Holiday Bowl, Inc., on July 24, 1957, for the purpose of estab-

lishing and operating a bowling alley. The corporation applied for and received a permit from the Commissioner of Corporations: to sell and issue 500 shares of common stock to the individual defendants, 125 shares to each, in cancellation of a $50,000 corporate indebtedness to them, the stock to be held in escrow; to sell and issue to the public 2,000 shares of preferred and 500 shares of common in units of four preferred and one common at the price of $500 a unit on a subscription basis, the total purchase price to be impounded until all the units were sold and paid for. The corporation took over a lease of certain premises and various contracts including contracts for the construction of a building and the installation of equipment and fixtures.

On March 5, 1958, plaintiff and the individual defendants went to the office of defendants' attorney and there was then prepared and signed by the individual defendants an application to the Commissioner of Corporations to transfer in escrow to plaintiff a total of 100 shares of defendants' escrowed stock, each defendant to transfer 25 of his 125 shares. The consideration for such transfer was to be the full par value of $100 per share, or a total of $10,000. Following the preparation and execution of the application, plaintiff and Okuda, Uyemura, and Oshiro went to the office of the commissioner, and after some discussion filed the application.

Later that day this instrument, prepared by plaintiff's attorney, was read and signed by defendants Okuda, Uyemura, and Oshiro and by plaintiff:

"Agreement made this 4th day of March, 1958, by and between Hanko Okuda, Paul Uyemura, Harry Oshiro and Harley Kusumoto, hereinafter called party of the first part, and Henry Kaneko hereinafter called party of the second part, Witnesseth:

"The party of the first part hereby agree and covenant that they own 500 shares of Common Stock of Holiday Bowl, Inc., located at Crenshaw Blvd., Los Angeles, California. Said shares of stock are now held in escrow by Arnold M. Schwartz, Attorney at Law, at 6505 Wilshire Blvd., Los Angeles 48, California.

"Whereas, the party of the second part is desirous of purchasing Three Hundred Shares of Common Stock of aforementioned corporation at $30,000.00 @ $100.00 per share, under the terms and conditions hereinafter set forth:

"First: One Hundred Shares (100) of Common Stock to be purchased by the party of the second part for a total consideration of $10,000.00 upon the execution of this contract.

"Second: An Option to purchase Two Hundred Shares of Common Stock of the party of the second part for a total consideration of $20,000.00. Said Option to be exercised, if at all, on or about 180 days from the execution of this contract.

"It Is Mutually Agreed, that there is no default of payment of the corporation to any of its creditors. Upon the existence of any default this contract is null and void.

"It is further mutually agreed that upon each payment to the party of the first part, the shares of common stock now held in Escrow will be changed as to its ownership so that the name of the party of the second part shall appear thereon.

"In Witness Whereof, we have hereto signed our names hereto.

Hanko Okuda
_____
HANKO OKUDA

Paul Uyemura
_____
PAUL UYEMURA

Harry Oshiro
_____
HARRY OSHIRO

_____
HARLEY KUSUMOTO

Henry Kaneko
_____
HENRY KANEKO"

It will be noted Kusumoto did not sign the instrument. He departed on an out-of-town trip after he had signed the application for permit and before the instrument was signed by Okuda, Uyemura, and Oshiro. He had previously orally agreed to sign the instrument. He was absent from Los Angeles from March 5 to 10. The instrument was signed by Okuda, Uyemura, and Oshiro in the office of plaintiff's attorney. It was not delivered to any of them on the day it was signed. The original and all copies remained in the hands of plaintiff. On March 18, 1958, after Kusumoto had returned to Los Angeles, a copy was delivered to him.

On March 7, 1958, plaintiff delivered a check for $10,000 to Okuda, Uyemura, and Oshiro payable to them as payment for the 100 shares. On April 9 Okuda, Uyemura, and Oshiro

returned the $10,000 check to plaintiff and refused to proceed on the ground the contract did not express the full agreement of the parties. On April 7, 1958, plaintiff sent to each of the four individual defendants a cashier's check for $7,500 each, a total of $30,000, as payment in full for the 300 shares referred to in the instrument. Accompanying each check, plaintiff sent each individual defendant a letter stating, "The enclosed check will replace the check dated March 7, 1958," and demanding that each transfer to plaintiff 75 shares. Two of the letters with the $7,500 checks were not accepted. The other two checks were returned to plaintiff's attorney by defendants' attorney also on April 9, 1958, with a statement that "no basic agreement exists between the payees and your client with respect to which there is any obligation to accomplish the transfer requested in your letter." This suit was filed April 21, 1958.

The court found the instrument dated March 4, 1958, was a contract; it was executed; there was a basic agreement between plaintiff and Hanko Okuda, Paul Uyemura and Harry Oshiro for the delivery by said named defendants to plaintiff of 75 shares each of the common stock of Holiday Bowl, Inc., for $100 a share; no basic agreement existed between plaintiff and Harley Kusumoto as to the option set forth in the contract signed March 5, 1958, and dated March 4, 1958, for 50 shares of the common stock owned by said defendant Harley Kusumoto; plaintiff has duly performed and offered to perform and is ready and willing to perform the terms of the contract dated March 4, 1958, on his part, and exercised the option contained therein; defendants prior to the commencement of the action repudiated the contract on their part and wholly refused to accept any performance thereof and prevented performance thereof by plaintiff and notified plaintiff that they would not perform the same.

### Appeal of Defendants

Defendants contend the contract was not executed but remained incomplete and inchoate, creating no rights in plaintiff, because it was not signed by Kusumoto. It is argued that inasmuch as Kusumoto did not sign the contract, it is not binding on Okuda, Uyemura, and Oshiro. The court found the contract and option to purchase dated March 4, 1958, for 100 shares of the common stock, or 25 shares each of Okuda, Uyemura, Oshiro, and Kusumoto, is a valid and binding contract; and the option to purchase the additional shares of each of said defendants has been duly exercised by plaintiff but is

only binding on Okuda, Uyemura, and Oshiro, but not on Kusumoto. The court concluded plaintiff was entitled to judgment that the contract be specifically enforced, that on payment of $2,500 to each of the individual defendants, each of them cause to be transferred in escrow and on the books of the corporation 25 shares to plaintiff, and that Okuda, Uyemura, and Oshiro apply for a permit to transfer to plaintiff in escrow 50 shares owned by each of them on payment of $5,000 to each of them by plaintiff and that each of them cause to be transferred 50 shares to plaintiff.

■ It is not the rule that a contract, which on its face purports to be between the parties named in the instrument, must invariably be executed by all whose names appear in the instrument before it will be binding on any. ■ In the absence of a showing that a contract is not to be deemed complete unless signed by all parties, the parties signing may be bound though others have not signed. (12 Cal.Jur.2d § 49, p. 247.) ■ In determining whether the promises were joint or joint and several, when uncertainty arises concerning the meaning of a contract the language used by the parties is to be considered in the light of the surrounding circumstances and of the practical and mutual construction placed thereon as shown by their acts and conduct before any controversy has arisen between them. (*Douglas* v. *Bergere,* 94 Cal.App.2d 267, 270 [210 P.2d 727].)

We construe the court's findings and conclusions as determining that defendants' obligations were joint and several. As stated by the learned trial judge in his memorandum opinion, the discussions between the parties prior to the signing of the contract "embraced the immediate purchase by the plaintiff of 25 shares of the common stock from each of the defendants for a total consideration of $10,000, in order to meet the then due installment to the Continental Bowling Corporation, as well as the securing of other financing by the plaintiff and the granting of an option to plaintiff to purchase additional stock."

The application for the permit to transfer the stock to plaintiff, signed and verified by each individual defendant, contained these representations:

"Each of the applicants severally is the owner of 125 shares of the common stock of Holiday Bowl, Inc., a California corporation, which such shares have been issued pursuant to the authority contained in Paragraph I of Permit dated December 5, 1957. . . .

"Applicants propose to transfer subject to the escrow condition as contained in said permit dated December 5, 1957, one hundred shares of the common stock of Holiday Bowl, Inc. to Henry Kaneko.

"That the securities owned by applicants as aforesaid are evidenced by certificates as follows:

"a. Certificate No. 1 for 125 shares of the common stock of Holiday Bowl, Inc. issued in the name of Hanko Okuda;

"b. Certificate No. 2 for 125 shares of the common stock of Holiday Bowl, Inc. issued in the name of Paul Uyemura;

"c. Certificate No. 3 for 125 shares of the common stock of Holiday Bowl, Inc. issued in the name of Harry Oshiro;

"d. Certificate No. 4 for 125 shares of the common stock of Holiday Bowl, Inc. issued in the name of Harley Kusumoto.

"Each of the applicants proposes to transfer to the said Henry Kaneko twenty-five shares from the 125 shares represented by the certificate owned by him as aforesaid.

"None of the proceeds from the sale will be used directly or indirectly for the benefit of the issuer (Holiday Bowl, Inc.) but are for the personal benefit of the individual transferors.

"Attached hereto marked as Exhibit 'A' is a statement signed by the proposed transferee in accordance with the provisions of Section 419 of Title 10 of the Administrative Code of the State of California.

"That each of the applicants proposes to transfer such securities in consideration of cash in the amount of $100.00 for each share so transferred. The purpose for the proposed transfer is that both transferors and transferee are desirous of having the proposed transferee as an interested party in the Corporation immediately and without awaiting the compliance with the provisions of the depositary escrow concerning the sale of preferred and common stock in units to the general public."

Attached to the application was this statement signed by plaintiff:

"The undersigned, HENRY KANEKO, hereby declares that:

"1. He has full knowledge of the terms of the escrow condition contained in that certain Permit of the Commissioner of Corporations dated December 5, 1957, issued to Holiday Bowl, Inc., a California Corporation;

"2. He accepts such securities subject to the conditions of such escrow until released by the Commissioner of Corporations of the State of California;

"3. He is aware that none of the proceeds from the sale

will be used directly or indirectly for the benefit of the said Corporation, but are for the personal benefit of the several transferors."

The order of the Commissioner of Corporations consenting to the transfer from the individual defendants to plaintiff dated March 10, 1958, provided:

"I expressly consent to the transfer of 100 shares of the Common stock of HOLIDAY BOWL, INC. to be effected in the following manner:

| "From: | Hanko Okuda | 25 Common Shares |
| " | Paul Uyemura | 25 Common Shares |
| " | Harry Oshiro | 25 Common Shares |
| " | Harley Kusumoto | 25 Common Shares |
| "To: | Henry Kaneko | 100 Common Shares" |

Civil Code, section 1430, reads: "An obligation imposed upon several persons, or a right created in favor of several persons, may be: 1. Joint; 2. Several; or, 3. Joint and several."

█ Civil Code, section 1659, reads: "Where all the parties who unite in a promise receive some benefit from the consideration, whether past or present, their promise is presumed to be joint and several."

The presumption is not conclusive. (Code Civ. Proc. § 1962.) It is rebuttable but controls in the absence of evidence to the contrary. (Code Civ. Proc., § 1961; *Gummer* v. *Mairs*, 140 Cal. 535, 537 [74 P. 26].) █ When controverted by other evidence an issue of fact is made for the determination of the trial court and its conclusion is conclusive on a reviewing court unless it is clearly unsupported by substantial evidence. (*Simonton* v. *Los Angeles Trust & Sav. Bank*, 205 Cal. 252, 258 [270 P. 672]; *Siegell* v. *York*, 84 Cal.App.2d 383, 388 [191 P.2d 50]; *Estate of Ades*, 81 Cal.App.2d 334, 337 [184 P.2d 1]; *Leathers* v. *Leathers*, 77 Cal.App.2d 134, 141 [174 P.2d 875].)

"A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, § 1636.) "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." (Civ. Code, § 1643.) "A contract may be explained by reference to the

circumstances under which it was made, and the matter to which it relates.'' (Civ. Code, § 1647.)

Application of these principles to the facts related makes it clear that Okuda, Uyemura, and Oshiro are bound by the contract.

It is argued the contract was never executed because it was the understanding of the parties that any agreement they made was to be reduced to writing and signed by all parties before it would be a complete or binding agreement. The trial court found to the contrary. As it said: ''The signed agreement of March 5, 1958, is short, simple, and easily comprehensible. By it, the signatory parties agree: (1) to forthwith sell to plaintiff 100 shares of stock for $10,000, and (2) to give to plaintiff an option to purchase an additional 200 shares for $20,000.'' Its finding cannot be disturbed.

Defendants assert the contract was not executed in that it was not delivered. They rely on the rule that the execution of an instrument is the subscribing and delivering it. (Code Civ. Proc., § 1933; *American Aeronautics Corp.* v. *Grand Central Aircraft Co.,* 155 Cal.App.2d 69, 81 [317 P.2d 694].) There was evidence that after Okuda, Uyemura, and Oshiro had signed the contract none of them requested a copy; plaintiff asked Uyemura if they wanted a copy; Uyemura replied, '' 'You can give us a copy when Harley signs it.' ''

The rule applicable to the facts at bar is stated in *Kreling* v. *Walsh,* 77 Cal.App.2d 821 (p. 833) [176 P.2d 965] : ''Appellant next challenges the validity of the written agreement on the ground that though he signed it, appellant never delivered it to respondents. The physical transfer of a document is not indispensable to its validity. In the instant case, the court found on clear and substantial evidence that the written agreement was executed by the respective parties thereto. . . . [Code Civ. Proc., § 1933, quoted]. . . . [R]etention of an instrument by one of the parties after both have signed it is not conclusive evidence of its nondelivery. It must be considered as delivered if the parties understand it has been executed and is in operation. [ ] That delivery of an instrument is a question of intent has long been the rule in this state. If from any or all of the circumstances, appellant manifested or made known his intention to depart with his dominion and control over the instrument to the end that its terms might be put into effect, then 'delivery' was sufficient and complete. We find in the record before us sufficient competent evidence upon which the trial court could base the

conclusion that the conduct and acts of appellant manifested an intent to proceed in accordance with the terms of the written agreement which he had signed. That is sufficient to constitute delivery in contemplation of law though the instrument itself remained in the possession of appellant.''

 And *Handley* v. *Guasco,* 165 Cal.App.2d 703, says (p. 710) [332 P.2d 354]: ''Defendants contend that the court's findings to the effect that the agreements were delivered to plaintiffs are unsupported. There was no physical or manual delivery to either plaintiff. The agreements at all times were left with Watrous, who was the agent of defendants. A written contract takes effect only upon delivery. (Civ. Code, § 1054.) It is not executed until it is subscribed *and delivered.* A manual or formal tradition is not indispensable to an effective delivery. [Citations.] 'That delivery of an instrument is a question of intent has long been the rule in this state.' (*Kreling* v. *Walsh, supra,* at p. 833.) Whether an instrument has been delivered is a question of fact to be determined from all the attendant circumstances. And in *Chovin* v. *Miranda* (1936), 18 Cal.App.2d 193, 195 [63 P.2d 845], it was held, 'Retention of a lease by the lessor is not conclusive evidence of its nondelivery; if such retention is with the consent of the lessee, it must be considered as delivered if the parties understand it has been executed and is in operation.' ''

 As we have observed, all individual defendants signed the application for permit before the contract was signed. Accompanying the application was a statement signed by plaintiff that he accepted the stock subject to the conditions of the escrow until released by the commissioner. Okuda, Uyemura, Oshiro and plaintiff took the application and the accompanying statement to the commissioner's office where it was filed the same day. The evidence warranted the court in finding the contract was delivered.

 The court found: ''That on March 5, 1958 before he signed such application for permit, defendant HARLEY KUSUMOTO orally agreed to sell plaintiff 25 shares of common stock of HOLIDAY BOWL, INC. for $2500.00 and the written application dated March 5, 1958 to the Commissioner of Corporations mentioned hereinabove is a memorandum of such oral agreement signed by defendant HARLEY KUSUMOTO.''

Defendants assert the judgment in favor of plaintiff and against Kusumoto is erroneous in that the application to the

commissioner to transfer the stock is not a sufficient memorandum to take the oral agreement out of the statute of frauds, and that the finding of an oral agreement and that the application is a sufficient memorandum is not supported by the evidence.

The assertion that the finding of an oral agreement by Kusumoto to sell plaintiff 25 shares for $2,500 is unsupported is wholly without merit. There was ample evidence from which the court could reasonably infer that Kusumoto had so agreed.

It is of course true, as defendants say, that an oral agreement for the sale and delivery of stock in a corporation of a value of $500 or upwards is within the statute of frauds. (*Berkey* v. *Halm,* 101 Cal.App.2d 62, 67 [224 P.2d 885].)

Such a contract is unenforceable unless some note or memorandum in writing of the contract or sale be signed by the party to be charged. (Civ. Code, § 1624a.) The writing need not be a formal contract drawn with technical exactness or even one intended to create an obligation. (*Guerrieri* v. *Severini,* 132 Cal.App.2d 269, 274 [281 P.2d 879].) It need not contain all the details of an agreement. (*Gibson* v. *De La Salle Institute,* 66 Cal.App.2d 609, 627 [152 P.2d 774].)

If the court, after acquiring knowledge of all the facts concerning the transaction which the parties themselves possessed at the time the agreement was made, can plainly determine from the memorandum the identity of the parties to the contract, the nature of its subject matter, and its essential terms, the memorandum will be held to be adequate. (*Brewer* v. *Horst & Lachmund Co.,* 127 Cal. 643, 646 [60 P. 418, 50 L.R.A. 240].)

The application to the Commissioner of Corporations stated that Kusumoto owned 125 shares of the common stock of Holiday Bowl, Inc., evidenced by certificate Number 4 and that he proposed to transfer to plaintiff 25 shares from the 125 shares represented by the certificate owned by him in consideration of cash in the amount of $100 for each share so transferred. The application further stated: "The purpose for the proposed transfer is that both transferors and transferee are desirous of having the proposed transferee as an interested party in the Corporation immediately and without awaiting the compliance with the provisions of the depositary escrow concerning the sale of preferred and common stock in units to the general public." The application contained all essentials of the oral agreement made by Kusumoto. (*Estate of Turner,* 171 Cal.App.2d 591, 598 [341 P.2d 376]; *Albion*

*Lumber Co.* v. *Lowell,* 20 Cal.App. 782, 792-793 [130 P. 858, 864].) We hold the application to the Commissioner of Corporations was a sufficient memorandum to take the oral agreement made by Kusumoto out of the statute of frauds.

 Defendants assert the contract lacks mutuality, is illusory, and lacks consideration. The point does not appear to have been stated as an issue in the pretrial order. However, we find no basis for the assertion. The contract and the application for permit are to be construed together. Two written instruments relating to the same subject matter and signed as part of substantially one transaction are construed together. (12 Cal.Jur.2d § 123, p. 334.) Construing the contract and the application together, it is clear that each of the individual defendants owned 125 shares of the common stock of Holiday Bowl, Inc.; that plaintiff wanted to purchase from defendants 300 shares at $100 a share: (a) 100 shares to be purchased for $10,000 on execution of the contract, (b) 200 shares to be purchased for $20,000 on the exercise of the option granted plaintiff. And the contract provided: ''It is further mutually agreed that upon each payment to the party of the first part, the shares of common stock now held in Escrow will be changed as to its ownership so that the name of the party of the second part shall appear thereon.''

There was no want of consideration. The promises of Okuda, Uyemura, and Oshiro furnish a sufficient consideration to support the promises of plaintiff. The contract was not illusory; no one of the promises left plaintiff free to perform or withdraw at his own unrestricted, free pleasure. (See *J. C. Millett Co.* v. *Park & Tilford Distillers Corp.,* 123 F.Supp. 484, 489.)

Defendants urge that the provision in the contract reading, ''IT IS MUTUALLY AGREED, that there is no default of payment of the corporation to any of its creditors. Upon the existence of any default this contract is null and void,'' made the contract lacking in mutuality of obligation. The point is untenable. (*Mattei* v. *Hopper,* 51 Cal.2d 119, 122-124 [330 P.2d 625]; *Rodriguez* v. *Barnett,* 52 Cal.2d 154, 160-161 [338 P.2d 907].) Defendants agreed there was no default. The provision was one for the benefit of plaintiff which could be waived. The bringing of this suit constituted such a waiver. (*Pease* v. *Brown,* 186 Cal.App.2d 425, 429 [8 Cal.Rptr. 917].)

 The original permit issued by the Commissioner of Corporations authorizing the issuance of 500 shares of

common stock to the individual defendants provided that the owner "shall not consummate a sale or transfer of said securities, or any interest therein, or receive any consideration therefor, until the written consent of said Commissioner shall have been obtained so to do." Defendants contend the contract and the exercise of the option violated the original permit. The application to the commissioner for a permit to transfer 100 shares was signed and filed on March 5, 1958. Later that day the contract dated March 4 was signed by plaintiff and by Okuda, Uyemura, and Oshiro. The commissioner issued the permit authorizing transfer by the individual defendants to plaintiff on March 10, 1958. The contract was delivered to Kusumoto on March 18, 1958. Nothing more was done. No sale was ever consummated. And there was never any transfer of the stock from any one of defendants to plaintiff. (Corp. Code, § 2472.) There was no violation of the original permit as to the 100 shares. ▉ As to the option, we adopt part of the opinion of the learned trial judge:

"The law appears to be clear that the necessity of securing the approval of a governmental agency to the complete performance of an agreement is no bar to the granting of specific performance thereof. (*Franko* v. *Olszewski*, 316 Mich. 485 [25 N.W.2d 593]; *Watson Bros. Transp. Co.* v. *Jaffa* (8 Cir.), 143 F.2d 340, 346.) . . .

▉ "During the progress of the trial, the question of the illegality of the contract of March 5, 1958, was raised upon the defendants' contention that it violated the conditions of the permit of the Commissioner of Corporations, and in support thereof defendants relied upon *Duntley* v. *Kagarise*, 10 Cal.App.2d 394 [52 P.2d 560], and *Tevis* v. *Blanchard*, 122 Cal.App.2d 731 [266 P.2d 85]. In the instant case the condition of the permit is that the 'owner . . . shall not *consummate* a sale or transfer of said securities, or any interest therein, or receive any consideration therefor, until the written consent of said Commissioner shall have been obtained so to do.' This is far different from the language of the conditions involved in the cited cases, that the 'holder . . . shall not sell, or offer for sale . . . or agree to sell, or transfer . . . until a written consent . . . is obtained so to do.' It is obvious that the change in the form of the condition imposed by the Commissioner of Corporations was intentional so as to permit executory contracts for the sale of stock held in escrow, but to prohibit the consummation of sale and the payment of the consideration until the permit was issued. Reference to Administrative Code,

Sec. 419, et seq., which requires that the proposed transferee sign and file a statement along with the application to transfer, clearly indicates that there may be an executory contract of purchase and sale when the application for transfer is made." (See *Randall* v. *California Land Buyers Syndicate,* 217 Cal. 594, 597-598 [20 P.2d 331]. *Cf. Rice* v. *May* (9 Cir.) 231 F.2d 389.)

Furthermore, the judgment at bar orders Okuda, Uyemura, and Oshiro to forthwith make written application to the Commissioner of Corporations for a permit to transfer to plaintiff in escrow 50 shares of common stock owned by each of them on the payment to each of them by plaintiff of $5,000; and if they fail to within a time specified plaintiff is authorized to do so on their behalf as their agent and attorney in fact. Obviously, if the commissioner does not issue a permit, a sale of the shares covered by the option will not be consummated.

▉ It is urged there was no consideration for the option. The agreement of plaintiff to buy the 100 shares constituted consideration for the option. (*Gatley* v. *Shockley,* 215 Cal. 604, 611 [12 P.2d 436].) ▉ An option given for a consideration is irrevocable and cannot be terminated without the consent of the optionee during the time specified, and this is so regardless of the adequacy of the consideration. (*Caras* v. *Parker,* 149 Cal.App.2d 621, 626 [309 P.2d 104]; 12 Cal.Jur.2d § 16, p. 206.)

Defendants assert the contract was not fair, just, or reasonable, and the entire transaction was oppressive, unjust, and inequitable as to them. The court found, "That the agreement dated March 4, 1958 is fair and equitable; that there was no fraud, deceit or misrepresentation or unconscionable conduct on plaintiff's part in connection with the making thereof." There was no evidence of fraud, deceit, or misrepresentation. The suggestion that the contract was not fair, just, and reasonable is predicated on the argument that plaintiff's purpose was to obtain control of Holiday Bowl, Inc.; that plaintiff took undue advantage of the financial condition of the corporation and of defendant stockholders; and that plaintiff's attorney was guilty of unprofessional conduct. These were all questions of fact decided adversely to defendants by the trial judge. We find no merit in any of them.

▉ The right of plaintiff to specific performance arises not only out of the reasonable value tendered but also from the fact that the shares of Holiday Bowl had a peculiar value to plaintiff. They could not have been purchased on the open

market; could be acquired only from the individual defendants; were acquired by plaintiff as a part of his business program; and therefore defendants' failure to deliver could not have been compensated by a money judgment. (*Glascock* v. *Sukumlyn*, 131 Cal.App.2d 587, 593 [281 P.2d 90].)

▮▮▮ The contract provided "Said Option to be exercised, if at all, on or about 180 days from the execution of this contract." The court found the option had been duly exercised. Defendants claim it was not validly exercised. They argue that "on or about 180 days" means either the day mentioned or a day in very near proximity thereto; that because plaintiff exercised the option on April 7, 1958, or 34 days after the contract was dated, it was not validly exercised. There are two answers to the contention: First, an acceptance of an option may be made before the earliest time set for the exercise of the option, and it may have the effect of a continuing acceptance, becoming effective at the time set for the exercise. (50 Cal.Jur.2d § 172, p. 200.) Second, defendants repudiated the contract on March 18, 1958. A party to a contract cannot take advantage of his own act or omission to escape liability thereon. (*Ray Thomas, Inc.* v. *Cowan,* 99 Cal. App. 140, 145 [277 P. 1086].) The repudiation of a contract by one party prior to the date performance by the other is due excuses the other from tendering performance. (12 Cal. Jur.2d § 217, p. 438.) Defendants cannot claim that acceptance of the option should have been made "on or about 180 days" from the execution of the contract. (*Edson* v. *Mancebo,* 37 Cal.App. 22, 24 [173 P. 484].)

▮▮▮ The court found on March 4, 1958, the common stock of Holiday Bowl, Inc., was and is of unknown value and had and has no ascertainable market value, and the value thereof was and is dependent upon the success of the business of Holiday Bowl, Inc.; and at the time of the commencement of this action, and on March 4, 1958, common stock of said Holiday Bowl, Inc., was not listed and is not listed on any exchange and could not be purchased except on the basis of $100 per share of common stock together with four shares of preferred stock at $100 per share.

Defendants assert the corporate stock had a fixed value and was available on the open market, and that the contrary finding is unsupported. The point is without merit. The stock was not listed on any exchange, and the common could only be purchased on the basis of $100 a share for common together

with four shares of preferred at $100 a share. The common alone had no ascertainable market value.

Finally, defendants assert the findings are inconsistent and uncertain and the judgment is not supported by the findings. Our examination of the record discloses the point to be without merit. As said in *Culjak* v. *Better Built Homes, Inc.,* 58 Cal.App.2d 720 (p. 725) [137 P.2d 492]:

" [I]f we concede the inconsistency of the findings, it cannot truly be said that the entire record discloses a miscarriage of justice. In such event the judgment can not be disturbed (Constitution, art. VI, § 4½). In order to justify the reversal of a judgment because of defective findings it must affirmatively appear not only that substantial injury has been caused and that substantial rights have been affected but also that a different result would have been probable if the defect had not occurred. [Citations.] On this point the code as well as the Constitution is mandatory. (Section 475 Code of Civil Procedure; § 4½, art. VI, *supra.*)"

### *Appeal of Plaintiff*

Plaintiff appeals from the part of the judgment denying him specific performance of the option provision of the contract as against defendant Kusumoto.

The contract of March 4, 1958, was not and never has been signed by Kusumoto. Hence the court found he was not bound by the option provision of the contract. In the answer to the complaint verified by Kusumoto and in a cross-complaint also verified by him, defendants alleged facts seeking reformation and for declaratory relief. It is argued that Kusumoto, by the allegations of the affirmative defenses and the averments of the cross-complaint, adopted, affirmed, and ratified the option provision of the contract and thereby waived the statute of frauds and is estopped from asserting it.

Neither the allegations of the affirmative defenses nor of the cross-complaint relied on sought to enforce the contract of March 4, 1958. They alleged that contract had not been executed. They alleged an entirely different oral agreement from that embodied in the March 4 contract and averred that by mutual mistake the terms orally agreed on had not been incorporated in the writing. It is manifest that Kusumoto did not, either by the affirmative defenses in the answer to the complaint or by the allegations of the cross-complaint, adopt, affirm, or ratify the option provision of the contract; that he did not waive the statute of frauds with respect thereto; and

that he is not estopped to assert the statute. Furthermore, the pretrial order stated: "The plaintiff's contentions are based largely on a written contract which is attached to the complaint and marked Exhibit 'A.' The genuineness and execution of this document are denied by the defendant and cross-complainant."

Affirmed. Defendants shall bear 95/100ths of the costs on appeal; plaintiff, 5/100ths thereof.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied September 14, 1961, and the petition of defendants and appellants for a hearing by the Supreme Court was denied October 25, 1961. Peters, J., was of the opinion that the petition should be granted.