[Civ. No. 16475.   First Dist., Div. One.   Jan. 23, 1956.]

JOSEPH W. FERRARA et al., Appellants, v. BEATRICE
FRIEDMAN SILVER, Respondent.

James J. Reilly for Appellants.

Sullivan, Roche, Johnson & Farraher for Respondent.

WOOD (Fred B.), J.—The plaintiffs seek specific performance of a contract for the exchange of real property or damages if specific performance cannot be granted.

Nonsuit was granted both as to specific performance and as to damages because of ''indefiniteness and lack of completeness in the contract,'' particularly the indefiniteness of a commitment by the plaintiffs to construct ''a banquet room building on westerly portion of Geary Boulevard lot,'' which lot plaintiffs were to convey to defendant as a part of the exchange.

It appears that there was upon this lot a building used by the plaintiffs as a restaurant. They planned to continue to use it for that purpose as lessees of defendant after consummation of the exchange. An unoccupied portion of this lot, about 31 feet by 115 feet, was intended as the site for the proposed ''banquet room building,'' which plaintiffs as such lessees were to use in conjunction with the restaurant.

We are concerned not only with the parol evidence rule but also with the statute of frauds. The agreement to construct a banquet room building was an integral and material part of an ''agreement for the leasing for a longer period than one year'' and ''for the sale of real property,'' a contract which is ''invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent.'' (Civ. Code, § 1624.)

Obviously, the expression ''banquet room building'' is too vague to furnish the basis for a contractual duty unless it can be adequately aided by extrinsic evidence.

The evidentiary consequences of the parol evidence rule and the statute of frauds were clearly and cogently defined and declared by Presiding Justice Shinn in *Ellis* v. *Klaff*, 96 Cal.App.2d 471, 475-478 [216 P.2d 15], and need not be repeated here at length. ▮ The gist of the matter is that neither the statute nor the rule permits the writing to

be varied by parol but each allows extrinsic evidence "to identify the subject matter of the contract from the written description, explain the meaning of ambiguous, abstruse, or technical expressions, and assist in interpreting the expressed intentions of the parties in the light of circumstances existing at the time of execution." (P. 476.) ▌ The rule does not preclude "proof of contemporoeous oral agreements collateral to, and not inconsistent with, a written contract where the latter is either incomplete or silent on the subject, and the circumstances justify an inference that it was not intended to constitute a final inclusive statement of the transaction." (P. 476.) ▌ The statute "demands that every material term of an agreement within its provisions be reduced to written form, whether the parties desire to do so or not. ▌ To be sufficient, the required writing must be one 'which states *with reasonable certainty*, (a) each party to the contract . . . and (b) the land, goods or other subject-matter to which the contract relates, and (c) *the terms and conditions of all the promises* constituting the contract and by whom and to whom the promises are made.' (Rest., Contracts, § 207. Emphasis added.)" (Pp. 476-477.)

▌ In the instant case the only extrinsic evidence that might tend to explain the meaning of "banquet room building" is the evidence that *after* the signing of the agreement and the setting up of the escrow plaintiffs engaged an architect who made a preliminary drawing of a floor plan for a banquet room and a new lounge, showing the same in relation to the existing building, and a sketch of the front elevation of the old and the proposed new building. These were delivered to a builder who later submitted to plaintiffs a letter describing the proposed structure in quite general terms, with an estimate that the building would cost approximately $28,500. Plaintiffs then delivered these documents to defendant's agent who in turn delivered them to defendant but there is no writing subscribed by either of the parties tending to show agreement to the terms, such as they are, exemplified by the plan, the sketch and the letter of estimate.

Plaintiffs offered to prove that Mr. Ferrara discussed the quality and size of the banquet room with defendant's agents (implying that thereby the terms became definite), but that offer clearly pertained to discussions had *after* the signing of the agreement and contained no suggestion that those discussions culminated in a writing subscribed by the parties to the agreement. Plaintiffs apparently hoped thereby to show what the parties had in mind, what they intended when

they signed the agreement. The court, when rejecting the offer, appropriately remarked, "that was all after you signed it [the agreement]." Plaintiff thereupon remarked "No, it was before. She had evidence of this before we signed it." But plaintiff's counsel corrected him, saying: "After you signed it."

Concerning the negotiations which led up to the execution of the agreement, there was nothing more definite than the words embodied in the agreement. For example, Mr. Ferrara testified that he told one of defendant's agents that he "wanted to build some banquet rooms, and it was going to cost me in the vicinity of $20,000." The agent testified that two days before the agreement was written and signed Mr. Ferrara told him how much he needed out of the deal and that out of this Ferrara would "build a banquet hall." The next day, March 5th, the agent told defendant that Ferrara was "building a banquet room." On the morning of the day the agreement was signed another of defendant's agents took her through the restaurant building and told her that Ferrara "would build a banquet hall on the vacant lot adjoining."

This brings us right back to the starting point: "Banquet room building," what does it mean?

How many banquet rooms? Ferrara at one time testified he had in mind a "building that was going to house three banquet rooms." Yet the floor plan which he later submitted showed only one banquet room (26' x 60'), the remaining space (21' x 50') being devoted to a new lounge.

Many more questions might be asked. How large was the building to be? How much of the lot was to be covered? How much was it to cost? Was it to be of concrete, brick or wood? How many stories? How finished inside and out? Concerning a suggestion that the municipal ordinances might determine the type of construction, Honorable Daniel R. Shoemaker, the judge who presided at the trial, pertinently remarked: ". . . it does not take lawyers to know that all types of construction are engaged in in these entertainment places; there are all types . . . We only have to ride around the city and see that some of them have an Hawaiian motif and some of them South Seas . . ."

Clearly, there was no meeting of the minds on any of these questions, no mutual understanding of the meaning of the expression "banquet room building" as used in this agreement

at the time of its signing and no subsequent memorandum subscribed by the parties supplying this lack.

It is, therefore, readily distinguishable from the agreement " 'to erect a *First class Theatre*' " on certain described premises " 'for motion picture theatre purposes' " involved in *Bettancourt* v. *Gilroy Theatre Co., Inc.*, 120 Cal.App.2d 364 [261 P.2d 351], when it appeared that the parties had in mind as a norm or standard a certain existing theatre then being managed by one of the parties and that the building ordinances of the city would supply the minimum requirements as to type of construction and materials to be used.

Similarly, it lacks the frame of reference which the court found in *Hillman* v. *Hillman Land Co.*, 81 Cal.App.2d 174 [183 P.2d 730], which involved an alleged agreement to "construct about 30 three-bedroom houses" on a certain tract of land. The objection was that the failure to state the exact number of houses rendered the agreement too indefinite, but the court held: "It is obvious that the number to be erected would depend upon the building and zoning laws and regulations and upon the portion of the property that would be required to be dedicated for street purposes." (P. 185.)

The facts of our case are much more nearly like those of *Colorado Corp., Ltd.* v. *Smith*, 121 Cal.App.2d 374 [263 P.2d 79], in which a petition for a hearing by the Supreme Court was denied. The buyer's agreement was to construct "residences of not less than 1200 square feet each on the parcels facing on Gault Street" (p. 375). The sizes of the parcels were not specified and the property was not subdivided. The contract was deemed "incomplete in not specifying how many residences were to be constructed and . . . silent as to the size (except that each was to be 1200 square feet), type, location, cost, appearance, or any other details of construction." (P. 377.) The court concluded that this phase of the contract was "too vague and uncertain to give rise to a contractual duty." (P. 377.)

The judgment is affirmed.

Bray, J., and Peters, P. J., concurred.

A petition for a rehearing was denied February 21, 1956, and appellants' petition for a hearing by the Supreme Court was denied March 21, 1956.