[Civ. No. 18805. First Dist., Div. One. Aug. 15, 1960.]

VERA RIVERS et al., Respondents, v. PHILANDER BROOKS BEADLE et al., Appellants.

John T. Tully for Appellants.

Gladstein, Anderson, Leonard & Sibbett and Norman Leonard for Respondents.

BRAY, P. J.—Defendants appeal from a judgment, without jury trial, in favor of plaintiffs in the sum of $1,800.

694

1. Is the agreement to build "a speculative home" on each of three lots unenforceable because of uncertainty and incompleteness?
2. Applicability of sections 2466 and 2468, Civil Code.
3. Is judgment in favor of plaintiff Jackman supported?

Record

In 1955, Vera Rivers, a licensed real estate broker, doing business as Vera Rivers Realty, interested defendants in three lots for sale in San Rafael, the price of which was $16,500. Defendants counteroffered $13,500. The owners refused to accept less than $15,000. In order to consummate the sale, defendants told Vera Rivers that she would have to waive the brokerage commission. Defendants were buying the property to build houses on it for sale. Vera Rivers agreed to waive the commission, provided she was given an exclusive agency to sell the houses to be built. The following agreement was then entered into:

"March 3, 1955

"In consideration of Vera Rivers Realty handling my purchase of 3 lots located at Center Avenue, corner K Street, San Rafael, without brokerage, as evidenced by attached copy of deposit receipt, I hereby agree as follows:

"1) To build on each of said 3 lots a speculative home, which is to be placed on the market immediately for sale on completion of same.

"2) To give to Vera Rivers Realty the exclusive right to sell each of such houses and pay a 3% commission of the selling price, this exclusive right to sell to be effective immediately and to continue in effect for a period of one year from date of completion of each of such houses.

"/s/ Philander B. Beadle
"/s/ Eva May Beadle
"/s/ Vera Rivers"

The court found "That the term 'speculative home' means a home built with expectation of selling it for profit, and said meaning of said term was understood by both of the parties hereto; and that in relation to the area of said lots and the type of homes in said area, the said homes, if constructed by said defendants, would have been homes that would sell for approximately $20,000." The court thereupon allowed damages based upon an allowance of 3 per cent of $20,000

for each house, totaling for the three, $1,800. The evidence, if admissible, fully supports the finding.

### 1. *Sufficiency of Agreement.*

Defendants contend that the agreement does not meet the requirements of the statute of frauds and that in admitting evidence in interpreting the agreement the parol evidence rule was violated.

"The evidentiary consequences of the statute of frauds (Civ. Code, § 1624) are in many respects similar to those of the parol evidence rule (Code Civ. Proc., § 1856). But both require exclusion of extrinsic evidence which would vary, contradict, or add to the terms of the written agreement under consideration (*Craig* v. *Zelian,* 137 Cal. 105 [69 P. 853], statute of frauds; *Germain Fruit Co.* v. *Armsby Co.,* 153 Cal. 585 [96 P. 319], parol evidence rule), but both permit reception of such evidence to identify the subject matter of the contract from the written description, explain the meaning of ambiguous, abstruse, or technical expressions, and assist in interpreting the expressed intentions of the parties in the light of circumstances existing at the time of execution. [Citations.]" (*Ellis* v. *Klaff,* 96 Cal.App.2d 471, 475-476 [216 P.2d 15].)

The parol evidence rule does not require the parties to put their entire understanding in writing. Thus evidence of contemporaneous oral agreements may be admitted, provided they are not inconsistent with the written contract. As will hereafter appear, the oral evidence introduced in no way conflicts with the written contract. The statute of frauds, however, requires that the writing evidence the contract exclusively.

"Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, may prevent the creation of an enforceable contract . . . Vagueness, indefiniteness, and uncertainty are matters of degree, with no absolute standard for comparison. It must be remembered that all modes of human expression are defective and inadequate . . . In considering expressions of agreement, the court must not hold the parties to some impossible, or ideal, or unusual standard. It must take language as it is and people as they are. All agreements have some degree of indefiniteness and some degree of uncertainty . . . [P]eople must be held to the promises they make. The court must not be overly fearful of error; it must not be pedantic or meticulous in interpretation of expressions

. . . ■ If the parties have concluded a transaction in which it appears that they intend to make a contract, the court should not frustrate their intention, if it is possible to reach a fair and just result, even though this requires a choice among conflicting meanings and the filling of some gaps that the parties have left . . . The application of such a rule as this is believed to come nearer to attaining the purpose of the contracting parties than any other, to give more business satisfaction and to make [a] contract a workable instrument." (Corbin on Contracts, vol. 1, § 95, pp. 288-292.)

■ As to the statute of frauds, " '. . . To be sufficient, the required writing must be one "which states *with reasonable certainty*, (a) each party to the contract . . . and (b) the land, goods or other subject-matter to which the contract relates, and (c) the *terms and conditions of all the promises* constituting the contract and by whom and to whom the promises are made." (Rest., Contracts, § 207. Emphasis added.) (Pp. 476-477.)' " (*Ferrara* v. *Silver*, 138 Cal.App.2d 616, 618 [292 P.2d 251].)

■ With these rules in mind, let us examine the contract. (a) It clearly sets forth each party to the contract. The parties are the defendants on the one hand, and Vera Rivers on the other.

(b) The subject matter is that in consideration of the waiving of a commission by Vera Rivers for her handling defendants' purchase of the described three lots, defendants agree to build on each lot "a speculative home" to be placed on the market for sale immediately on completion. That "speculative home" had a definite meaning to the parties will hereafter appear.

(c) The agreement also clearly shows "the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made." These are, first, that defendants agree to build the homes (although the time is not stated, such an agreement imports an understanding that it must be built within a reasonable time (see 12 Cal.Jur.2d p. 375)); secondly, that defendants will place the homes for sale on the market immediately upon completion, and that Vera Rivers has the exclusive right until the expiration of one year after the houses are completed to sell them, and defendants agree that on such sale Vera Rivers will receive a commission of 3 per cent of the sale price. While the selling price is not fixed in the agreement (it could not be until the homes were built and their cost obtained), implied in the agreement,

and well understood by the parties, is that the defendants would fix the selling price to return a profit to them. Vera Rivers was not concerned with the selling price. She was given the right to sell, if possible, the houses for whatever price defendants might place the houses on the market. There was nothing indefinite in this term of the contract.

"Speculative home" as here used is not indefinite or vague. It had a definite meaning to the parties. The evidence showed that this is a term well known in real estate circles and to defendants, as meaning simply a home built with expectation of selling it at cost plus a profit and of the type and price of homes being then generally being built and sold in the area. Applicable here is *Bettancourt* v. *Gilroy Theatre Co., Inc.,* 120 Cal.App.2d 364 [261 P.2d 351], where this court held that an agreement " 'to erect a *First class Theatre'* " was sufficiently definite and certain to create and impose a contractual obligation.

All the terms and conditions of the promises are included in the agreement, namely, that defendants are to build three houses to sell. Vera Rivers has the exclusive right to sell them for a period of one year after they are constructed, and to receive a commission on sale of 3 per cent of the selling price. No other terms or conditions are required to make a definite contract; hence there was no violation of the statute of frauds.

It is true that some explanation has to be made of what the parties meant by a "speculative home," just as in *Bettancourt, supra,* explanation was required as to what the parties had in mind by " '. . . *First class Theatre.'* " ▉▉ In considering this question applicable here is the following from *Avalon Products, Inc.* v. *Lentini,* 98 Cal.App.2d 177, 179 [219 P.2d 485] : "The law leans against the destruction of contracts because of uncertainty and favors an interpretation which will carry into effect the reasonable intention of the parties if it can be ascertained. [Citations.] ▉▉ The description of the subject matter of an agreement may be indefinite but if it is capable of being identified and rendered definite and certain by evidence *aliunde,* the contract is enforceable. [Citations.] That is certain which can be made certain. (Civ. Code, § 3538.)" A "speculative home" appears from the evidence to be sufficiently definite and certain to enable the defendants to know what they had undertaken to do.

▉▉ The evidence concerning the meaning of the term did not violate the parol evidence rule. It in no way varied

the terms of the writing or supplied any terms. It merely served to identify the subject matter and assisted in interpreting the expressed intentions of the parties in the light of the circumstances at the time of the execution of the contract. Parol evidence here "should be, and is admissible, to explain what the parties meant by what they said." (*Wells* v. *Wells,* 74 Cal.App.2d 449, 457 [169 P.2d 23].) In *Hillman* v. *Hillman Land Co.* (1947), 81 Cal.App.2d 174, 185 [183 P.2d 730], it was contended that an agreement was so indefinite as to be unenforceable which provided that the defendants would construct "*about* 30 three-bedroom houses" (emphasis added). The court held otherwise, as it was "obvious that the number to be erected would depend upon the building and zoning laws and regulations and upon the portion of the property that would be required to be dedicated for street purposes."

 Nor is the fact that the contract does not state the time in which the buildings are to be constructed fatal to the contract. Where time is not stated, the law fixes the time as within a reasonable time after the execution of the contract (Civ. Code, § 1657; see 12 Cal.Jur.2d p. 375, § 159), and the evidence shows that such was the contemplation of the parties.

The facts of our case differ greatly from those in *Ferrara* v. *Silver, supra,* 138 Cal.App.2d 616, where the contract provided that a " 'banquet room building' " was to be built, and we held that that expression was so vague that the contract could not be enforced. There the parties, at the time of entering into the agreement, did not have in mind any particular type, size or price of building. As the court there said (p. 620), the parties did not have "in mind as a norm or standard" any building, such as the parties in *Bettancourt, supra,* did. In our case the parties did have in mind a norm or standard. It was the type, materials and range of price of speculative homes in the general area. In determining the sufficiency of the subject matter of the contract, the purpose of the contract must be borne in mind. Its basic purpose was to enable the real estate broker to obtain a commission on the sale of three houses, to make up for the waiver of a commission then due for the purchase by defendants of the lots. While the description might be considered too vague were this a contract of purchase of a house or houses, it is not too vague for the purpose intended. The type, materials and price (within the norm or standard above mentioned) was left to the discretion of defendants, but they were to build the houses and the broker was to be permitted to sell them on commission.

In *Ellis* v. *Klaff, supra,* 96 Cal.App.2d 471, there was a situation similar to that in *Ferrara, supra*; no norm or standard was in the mind of the parties when the agreement was made to construct a " '. . . building or buildings . . .' " which would " '. . . comply strictly with the Building Code . . .' " of Buenaventura (p. 473).

In *Colorado Corp., Ltd.* v. *Smith* (1953), 121 Cal.App.2d 374 [263 P.2d 79], the buyer of certain land agreed to construct " '. . . residences of not less than 1200 square feet each on the parcels facing on Gault Street . . .' " Here again no norm or standard had been agreed upon by the parties. Likewise in *Ganiats Construction, Inc.* v. *Hesse,* 180 Cal.App. 2d 377 [4 Cal.Rptr. 706], the parties did not have in mind the particular 30 acres to which the contract referred.

More applicable to our situation are *Hillman* v. *Hillman Land Co., supra,* 81 Cal.App.2d 174, where the court held definite an agreement to construct "about 30 three-bedroom houses," and *Bettancourt* v. *Gilroy Theatre Co., supra,* 120 Cal.App.2d 364, where the court upheld an agreement " 'to erect a *First class Theatre*' . . ." In *Gibson* v. *De La Salle Institute* (1944), 66 Cal.App.2d 609 [152 P.2d 774], it was claimed that a contract to purchase wines was too indefinite to be enforced. In holding that the telegrams evidencing the contract constituted sufficient memoranda under the statute of frauds the court said (p. 632) : "In the instant case details such as storage, place of delivery, transportation and the like, mentioned by the trial court, are matters either governed by the usages of the business, or subject to proof by parol evidence. Absence from the memorandum of provision therefor is not fatal to plaintiffs' case."

*Guerrieri* v. *Severini* (1955), 132 Cal.App.2d 269 [281 P.2d 879], dealt with a contract to sell wine "partly oral and partly in writing . . ." In holding that the written portion was a sufficient " 'note or memorandum of the contract' " to satisfy the statute of frauds the court said (p. 274) : "A contract to sell, or a sale, may be made in writing or by word of mouth, or partly in writing and partly by word of mouth, or may be inferred from the conduct of the parties, and under the statute of frauds (Civ. Code, § 1724) requiring that the contract 'or some note or memorandum thereof' be in writing, the writing essential need not be a formal contract, drawn up with technical exactness or even one intended by the parties to create an obligation. (*Gibson* v. *De La Salle Institute,* 66 Cal.App.2d 609, 631 [152 P.2d 774].) In that case it is said,

citing *Buckner* v. *A. Leon & Co.*, 204 Cal. 225, 227 [267 P. 693] :

" 'It has long been the rule that when parties have not incorporated into an instrument all of the terms of their contract, evidence is admissible to prove the existence of a separate oral agreement as to any matter on which the document is silent and which is not inconsistent with its terms; and that when there is a known usage of trade, persons carrying on that trade are deemed to have contracted in reference to the usage unless the contrary appears.' "

The evidence in our case shows that the term "speculative home" was one well known in the real estate business and known to the defendants. It should be pointed out that while the writing here was prepared by Vera Rivers, one of the defendants is and for a number of years has been a practicing lawyer. It is unreasonable to assume that he would enter into a contract which appeared indefinite to him, or whose terms he did not understand. He testified that when he signed it, the agreement was perfectly clear to him.

In *Buckner* v. *A. Leon & Co.*, 204 Cal. 225 [267 P. 693], the agreement provided that grapes were to be delivered "f.o.b." a certain shipping point. The defendant contended that because of this term, the plaintiff was not entitled to prove an oral agreement, that the buyer was to furnish the lug boxes. The court held such evidence admissible as it did not vary the terms of the written contract.

In *United Truckmen, Inc.* v. *Lorentz* (1952), 114 Cal.App. 2d 26, 34 [249 P.2d 352], we pointed out that *Ellis* v. *Klaff, supra*, 96 Cal.App.2d 471, 476, "contains a well supported discussion of the requirements of both the parol evidence rule and the statute of frauds." We referred to *Craig* v. *Zelian*, 137 Cal. 105 [69 P. 853], and other similar cases which upheld the rule above quoted from the *Ellis* case. Our case comes within this rule.

The allowance by the court of a commission based upon the lowest price in the price range for homes contemplated by the parties was eminently fair.

2. *Failure to Allege and Prove Compliance With Sections 2466 and 2468, Civil Code.*

▮▮▮▮ The complaint is entitled "Vera Rivers and Cole Jackman, Plaintiffs." It alleges that at all times mentioned therein "plaintiffs Cole Jackman and Vera Rivers were, and now are, doing business as . . . Vera Rivers Realty." Defendants demurred that the plaintiffs did not have legal

capacity to sue as they did not allege compliance with sections 2466 and 2468, Civil Code, the latter of which provides that an action may not be maintained "upon or on account of any contract or contracts made, or transactions had under ... their partnership name" if the partnership is doing business "under a fictitious name, or a designation not showing the names of the persons interested as partners ..." (§ 2466.) The demurrer was overruled. As "Vera Rivers Realty" obviously does not show the names of the partners alleged in the complaint, the demurrer should have been sustained. However, as will hereafter appear, defendants by their conduct at the trial are foreclosed from raising the point here.

Moreover, "An objection to the maintenance of an action on the ground that plaintiff has not complied with the provisions of sections 2466 and 2468 of the Civil Code by filing and publishing the certificate required thereby, is a mere matter of abatement pending the trial, which has the result of suspending the trial until the statute is complied with. It is not jurisdictional." (*Kodota Fig Assn.* v. *Case-Swayne Co.*, 73 Cal.App.2d 796, 804 [167 P.2d 518].)

Apparently at the pretrial conference plaintiffs satisfied the court and counsel that in spite of the allegation of the complaint, the partnership name at the time of the trial was Rivers-Jackman Realty, a designation showing the names of the partners. The pretrial conference order states that plaintiffs Rivers and Jackman contend that they are now doing business as Rivers-Jackman Realty; that at the time the contract was signed plaintiff Rivers was the sole owner of the business and was operating under the name of Vera Rivers Realty, plaintiff Jackman then being her office manager. Subsequently the parties became partners and are the only persons interested in the business. Defendants have tendered an issue that the action cannot be maintained because of failure to comply with sections 2466 and 2468 of the Civil Code. "However, in view of the foregoing statement of fact it appears that this defense is not well taken and the action may proceed on the basis that the contract was originally entered into with Vera Rivers Realty which has now been succeeded in its interest by Rivers-Jackman Realty. Thus the full names of all the parties in interest are revealed and the victitious [*sic*] name statute does not apply? [*sic*]"

At the trial defendants made no objection to the trial proceeding, nor to the introduction of evidence by plaintiffs in support of their claim, nor was any question of plaintiffs'

right to maintain the action presented to the trial court. Defendants made no effort to refute the statement in the pretrial conference order that the name under which the plaintiffs are conducting their partnership business is Rivers-Jackman Realty. No mention of the matter appears in defendants' memorandum in support of the motion for new trial. Sections 2466 and 2468 only require compliance therewith if the business is being conducted under a fictitious name or one not showing the names of those interested in it. During the time the name of the business was Vera Rivers Realty, the name was not a fictitious one and showed the name of the only person interested in it. Then when the partnership was formed the name Rivers-Jackman Realty was not a fictitious one, and was one which gave the names of the persons interested in the business. Hence, at neither time was it necessary to comply with sections 2466 and 2468. These facts, coupled with the findings in the pretrial conference order and the failure of defendants to raise any question concerning the matter in the trial court, support the judgment.

### 3. *Judgment in Favor of Plaintiff Jackman.*

 The situation concerning him is one that frequently occurs in the trial of cases. All parties assume that there is evidence on a certain subject and yet none has been introduced. Here it is apparent from a reading of the transcript that the parties and the court assumed that the new firm of Vera Rivers and Cole Jackman, doing business as Rivers-Jackman Realty, had succeeded to the claim against defendants of Vera Rivers, doing business as Vera Rivers Realty. Apparently no evidence of this fact was introduced. The pretrial conference order states that at the time of the agreement plaintiff Rivers was the sole owner of the business and that Jackman was her office manager. ''Subsequently the parties became partners. There are no other parties who either now, at the time the suit was filed, or at the time the agreement was entered into . . . have or have had any interest in the said real estate business.'' In listing the contentions of the parties the order does not show any issue raised by defendants over the ownership of the claim by the new partners.* The pretrial order controls the subsequent course of the case in accordance with rule 8.8, Rules of the Superior Court (*Fitzsimmons* v. *Jones,* 179 Cal.App.2d 5, 9 [3 Cal.Rptr. 373].)

---

*As hereinbefore stated, defendants did raise an issue over the alleged failure of the new partnership to comply with sections 2466 and 2468, Civil Code.

At the trial counsel for both parties stated the issues. At no time prior to the appeal did defendants' counsel raise any question concerning plaintiff Jackman's interest in the claim. It is too late to do it now. Moreover, it would seem to be of no great concern to defendants whether Jackman shares in the recovery or not, since his doing so in nowise would increase or decrease the extent of defendants' obligation.

The judgment is affirmed.

Tobriner, J., and Duniway, J., concurred.

A petition for a rehearing was denied September 8, 1960, and appellants' petition for a hearing by the Supreme Court was denied October 13, 1960.