Filed 3/8/21  Gandolfo v. Noman Medical Corp. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MICHELLE GANDOLFO et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> NOMAN MEDICAL CORPORATION et al., <br><br> Defendants and Appellants. | F078559 <br><br> (Super. Ct. No. 16CECG02562) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Rosemary T. McGuire, Judge.

Law Offices of Gregory L. Myers and Gregory L. Myers for Plaintiffs and Appellants.

Borchard & Callahan, Thomas J. Borchard and Janelle M. Dease for Defendants and Appellants.

-ooOoo-

Plaintiff sued for breach of a written contract.  The parties disputed the interpretation of the provision specifying the fee to be paid to plaintiff for her services.  After a court trial, the trial court interpreted the disputed provision, found defendant admitted it owed payment to plaintiff, but found plaintiff had not established a breach of contract.  It found plaintiff had established a debt defendant owed to plaintiff on an open

book account, however. Plaintiff appeals the adverse judgment on the breach of contract cause of action. Defendant cross-appeals, contending the operative first amended complaint did not include a cause of action based on an open book account, so the judgment is invalid. We conclude the trial court's factual findings establish a breach of contract cause of action. We reverse the judgment with directions to enter a new judgment in favor of plaintiff on the breach of contract cause of action.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 28, 2013, plaintiff Michelle Gandolfo, doing business as Central Valley Healthcare Systems, and Dr. Zaid Noman, on behalf of Xpress Urgent Care, a fictitious business name (doing business as) of defendant Noman Medical Corporation (NMC or defendant), entered into a written medical billing services agreement (the contract). In the contract, plaintiff agreed to provide specified billing and collections services to defendant. The contract provided defendant would pay plaintiff a fee of "6.0 percent of the total amount collected under this Agreement." In January 2016, the contract was orally extended to include Tustin Urgent Care, APC (Tustin).[1]

From September 1, 2013, to October 31, 2014, plaintiff billed for her services, and Dr. Noman paid the bills. Plaintiff did not send defendant bills for services rendered from November 2014, to June 2016, and defendant made no payments to her during that time. In August 2015, Dr. Noman asked how much he owed plaintiff and received a monetary figure higher than the amount he believed was owed. The contract was terminated on June 16, 2016.

Plaintiff sued for the amount she believed defendant owed under the contract. Her original complaint alleged causes of action for breach of contract, open book account, account stated, and unfair business practices (Bus. & Prof. Code, § 17200) against Dr. Noman and NMC. The first amended complaint, however, alleged only breach of

---

[1] Tustin was also doing business under the fictitious business name Xpress Urgent Care.

2.

contract and fraud. The fraud cause of action was later dismissed; Dr. Noman was also dismissed as a defendant. As a result, the only cause of action of the complaint that was in issue at trial was the breach of contract claim against NMC. NMC and Tustin cross-complained against plaintiff, alleging in several causes of action, including breach of contract, that plaintiff failed to competently perform her billing and collections duties, causing cross-complainants a loss of income.

The matter was tried to the court. The parties did not dispute that they entered into the contract; the issue presented by plaintiff's complaint was the interpretation of the language of the fee provision. The trial court issued a statement of decision in which it found that the parties signed the contract; specifically, plaintiff prepared the contract and Dr. Noman reviewed and signed it without making changes. After discussing the rules for interpreting contractual language, the trial court considered the contract and the testimony regarding each party's understanding of the fee provision. It interpreted the provision as Dr. Noman understood it: that the 6 percent fee applied only to the amount collected by plaintiff through her billing and collection efforts, and did not apply to amounts paid directly to NMC at its office (cash payments, copayments, or deductibles paid by the patient at time of service), which involved no action by plaintiff. The trial court found that Dr. Noman conceded NMC owed plaintiff money but disputed the amount. It set out its calculation and concluded NMC owed plaintiff a total of $85,125.64. Without explanation, the trial court then concluded: "[Plaintiff] did not meet her burden of establishing [that NMC] breached the contract."

The trial court went on to find that NMC was liable to plaintiff on an open book account, calculating damages in the same amount. It found plaintiff had not established causes of action for an account stated or unfair business practices. On the cross-complaint, the trial court found in favor of plaintiff. Judgment was entered in favor of plaintiff on the open book account and on the cross-complaint.

Plaintiff appealed; NMC and Tustin cross-appealed. In her appeal, plaintiff contends the trial court was incorrect in its determination that plaintiff failed to establish a breach of contract cause of action. She also argues the judgment on an open book account is proper; alternatively, the judgment could be upheld as a declaratory relief judgment under the request in the first amended complaint for such other relief as the court deems just and proper. In their cross-appeal, NMC and Tustin contend a cause of action on an open book account was not pled in the first amended complaint, which was the operative pleading at the time of trial, so the judgment in favor of plaintiff on that cause of action is improper and invalid. There is no challenge to the judgment on the cross-complaint.

## DISCUSSION

### I. Breach of Contract

#### A. Standard of review

When the trial court has issued a statement of decision, and the parties do not challenge the sufficiency of the evidence to support the trial court's findings, we accept the trial court's factual findings as set forth in the statement of decision. Our task then is to determine whether those factual findings support the judgment as a matter of law. (*City of Merced v. American Motorists Ins. Co.* (2005) 126 Cal.App.4th 1316, 1322.)

The parties have not supplied us with a reporter's transcript of the trial. When no reporter's transcript is provided on appeal, "it is presumed that the unreported trial testimony would demonstrate the absence of error. [Citations.] The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992.) Accordingly, the parties cannot, and do not, challenge the sufficiency of the evidence to support the trial court's findings, and we accept those findings as established.

## B.    Elements of a breach of contract cause of action

The elements of a cause of action for breach of contract are the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant, and damages. (*First Commercial Mortgage Co. v. Reece* (2001) 89 Cal.App.4th 731, 745.)

Both parties sued for breach of the same written contract. In their posttrial briefs, neither party questioned its existence. Both parties argued about the interpretation of the language of the fee provision. Defendant acknowledged there was "no dispute" that the parties entered into the contract. In its statement of decision, the trial court found: "On August 28, 2013, Dr. Zaid Noman and [plaintiff] signed a Medical Billing Services Agreement (Agreement) on behalf of Xpress Urgent Care and [Central Valley Healthcare Systems]. The Agreement sets forth the responsibilities and obligations of the parties and provides that [Central Valley Healthcare Systems] would receive '6.0 percent of the total amount collected under this Agreement.' (Exh. 201.)" Exhibit No. 201 was the same contract attached to the first amended complaint and the cross-complaint as the basis of the parties' claims.

The statement of decision discussed the parties' performance under the contract. It stated plaintiff billed for her services until October 31, 2014, and Dr. Noman paid the amounts billed. Plaintiff failed to send invoices for her services for November 2014, through June 2016, and defendant failed to pay her during that time. Dr. Noman later inquired about how much he owed plaintiff and thought the figure she gave him was higher than the amount he owed. The trial court found the contract was terminated on June 16, 2016.

The trial court considered the contract itself, as well as extrinsic evidence from the parties regarding their understanding of the disputed provision. It interpreted the disputed language of the contract in accordance with defendant's understanding of that language. It noted Dr. Noman's testimony that, under his interpretation of the contract,

5.

defendant owed plaintiff approximately $119,000 for her services from November 2014, to June 2016, but had overpaid by approximately $30,000 for earlier services. The trial court calculated plaintiff's damages in accordance with its interpretation of the fee provision, and concluded defendant owed plaintiff $85,125.64.

The trial court made findings of fact satisfying each element of the breach of contract cause of action. Nonetheless, without explanation, it concluded plaintiff "did not meet her burden of establishing [that defendant] breached the contract."

In its discussion of the breach of contract cause of action, the trial court noted plaintiff was required to establish mutual assent of the parties; it cited cases concluding that uncertainty and indefiniteness render a contract unenforceable. Based on this discussion, the parties construed the trial court's decision that plaintiff failed to establish her breach of contract cause of action to mean it determined the contract was so vague and uncertain that mutual assent to the contract was lacking.

**C.     Mutual assent**

To prove the existence of a contract, the plaintiff must establish: parties who are capable of entering into a contract, their mutual consent, a lawful object, and sufficient cause or consideration. (Civ. Code, § 1550; *Stewart v. Preston Pipeline, Inc*. (2005) 134 Cal.App.4th 1565, 1585–1586.) An essential element of a contract is assent or consent. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 811.) "The 'consent' must be 'mutual.' [Citations.] 'Consent is not mutual, unless the parties all agree upon the same thing in the same sense.' " (*Ibid*.)

" ' "The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe." ' " (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 789.) It is not determined by the unexpressed intentions or understandings of the parties. (*Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 173.) "It is fundamental … that 'there need not be a subjective meeting of the minds; in the absence

6.

of fraud, mistake, etc. … , the outward manifestation or expression of consent is controlling.  In other words, mutual consent is gathered from the reasonable meaning of the words and acts of the parties, and not from their unexpressed intentions or understanding.' " (*Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1027, italics omitted.) "Under the objective test, a 'meeting of the minds' is unnecessary, and a party may be bound though he misunderstood the terms of a proposed contract and actually had a different undisclosed intention." (*Myers v. Carter* (1963) 215 Cal.App.2d 238, 241.)

"In the absence of fraud, mistake, or another vitiating factor, a signature on a written contract is an objective manifestation of assent to the terms set forth there." (*Rodriguez v. Oto*, *supra*, 212 Cal.App.4th at p. 1027.)  There is nothing in the record to indicate either party claimed any fraud, mistake, or other vitiating factor precluded mutual assent of the parties.  Both parties signed the contract, objectively manifesting consent to its terms.

A proposal cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain; they are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.  If the proposed terms are not reasonably certain, there is no contract.  (*Weddington Productions, Inc. v. Flick*, *supra*, 60 Cal.App.4th at p. 811.)

" 'Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, may prevent the creation of an enforceable contract . . . Vagueness, indefiniteness, and uncertainty are matters of degree, with no absolute standard for comparison.  It must be remembered that all modes of human expression are defective and inadequate . . . In considering expressions of agreement, the court must not hold the parties to some impossible, or ideal, or unusual standard.  It must take language as it is and people as they are.  All agreements have some degree of indefiniteness and some degree of uncertainty . . . [P]eople must be held to the promises they make.  The court must not be overly fearful of error; it must not be pedantic or meticulous in

7.

interpretation of expressions . . . If the parties have concluded a transaction in which it appears that they intend to make a contract, the court should not frustrate their intention, if it is possible to reach a fair and just result, even though this requires a choice among conflicting meanings and the filling of some gaps that the parties have left . . . The application of such a rule as this is believed to come nearer to attaining the purpose of the contracting parties than any other, to give more business satisfaction and to make [a] contract a workable instrument.' " (*Rivers v. Beadle* (1960) 183 Cal.App.2d 691, 695–696.) " '[T]he modern trend of the law favors carrying out the parties' intentions through the enforcement of contracts and disfavors holding them unenforceable because of uncertainty.' " (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1192.)

In *Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761 (*Ladas*), insurance sales representatives sued their employer for breach of contract. The plaintiffs signed contracts in which the employer agreed to pay them commissions on sales and renewals of policies. (*Id*. at pp. 766–767.) The plaintiffs alleged that, orally and in written materials, the employer promised to pay them at the same level as other similarly situated insurance sales representatives, so the plaintiffs could maintain compensation parity in keeping with industry standards. (*Id*. at pp. 767–768.) Company handbooks and memoranda stated it was the company's " 'aim,' " " 'policy,' " or " 'practice' " to adjust sales representatives' salaries periodically to maintain income levels comparable to those of similar employees in comparable organizations. (*Id*. at pp. 768–769.)

The court found the alleged promise by the employer to consider parity in setting commission rates was too vague and indefinite to give rise to an enforceable contractual duty. It stated:

> "The vague nature of the alleged duty to pay parity is best illustrated by appellants' counsel's comments … : 'The plaintiffs concede that the contract as written does not—does not expressly state that the agents will be paid exactly what State Farm, Farmers or Allstate agents receive as commissions. Plaintiffs are not asking for that. [¶] We have all along

8.

merely been proposing this evidence solely so that it could be offered as *one of the factors* that the company would *consider* when it adjusted the unit value .… [¶] … I am merely asking that [commission rates paid by other insurers] *be taken into consideration* by the company or that there was an *obligation or a promise ...* a company policy and practice that they would take that into consideration.' (Italics added.)

"An amorphous promise to 'consider' what employees at other companies are earning cannot rise to the level of a contractual duty. Appellants were paid according to a precise unit value system detailed in the comp plan. By what standard would a court or a jury determine that the company failed to meet its obligation to 'consider' commissions earned by competitors? What would be the relevant market on which such a duty would be predicated? [The employer's] four major competitors? All insurers in the state? Eighty companies nationwide? How would 'damages' be calculated? By totalling up all yearly commissions earned by other agents, averaging them and subtracting the difference? By coming up with an 'industry standard' factor and increasing [the employer's] unit value ratio by that factor? The nature of the obligation asserted provides no rational method for determining breach or computing damages." (*Ladas*, *supra*, 19 Cal.App.4th at pp. 770–771.)

In *Scott v. Pacific Gas & Electric Co*. (1995) 11 Cal.4th 454, the court upheld the trial court's finding that the employer and its employees entered into an implied contractual agreement not to demote employees without cause. (*Id*. at p. 465.) It rejected the defendant's argument, based on *Ladas*, that such an agreement was too vague to be enforced. (*Id*. at pp. 466–467.) "The *Ladas* court thus applied the well-established principle that ' "[a]lthough the terms of a contract need not be stated in the minutest detail, it is requisite to enforceability that it must evidence a meeting of the minds upon the essential features of the agreement, and that the scope of the duty and limits of acceptable performance be at least sufficiently defined to provide a rational basis for the assessment of damages…." ' " (*Id*. at p. 467.) The trial court, having found an implied agreement not to demote for good cause, only needed to apply the term "good cause" in accordance with definitions used in wrongful discharge cases. "The term 'good cause' '[e]ssentially … connote[s] "a fair and honest cause or reason, regulated by good faith on the part of the party exercising the power" ' [citation], as opposed to one that is 'trivial,

capricious, unrelated to business needs or goals, or pretextual ….' " (*Ibid*.) Accordingly, the court concluded the implied promise not to demote without good cause was not unenforceably vague. (*Ibid*.)

In *Brant v. California Dairies, Inc.* (1935) 4 Cal.2d 128, the plaintiff, owner of a dairy ranch, contracted with the defendant for the defendant to provide services marketing and distributing the plaintiff's milk. (*Id*. at p. 129.) The plaintiff and Carver, a representative of the defendant, negotiated new terms for the contract in a series of letters. The plaintiff contended the letters resulted in a contract for the defendant to increase the amount of milk it handled, and the contract could be terminated only on one year's notice. The defendant contended the arrangement was for a trial period and the contract could be terminated if it became burdensome to the defendant. (*Id*. at p. 130.) The defendant later refused to distribute the plaintiff's milk, and the plaintiff sued for damages for breach of contract. (*Ibid*.)

The trial court found there was no meeting of the minds, based on Carver's testimony about his interpretation of the contract terms proposed by the plaintiff. The Supreme Court rejected that testimony and the trial court's conclusion, stating, "it is now a settled principle of the law of contract that the undisclosed intentions of the parties are, in the absence of mistake, fraud, etc., immaterial; and that the outward manifestation or expression of assent is controlling. This is the 'objective' standard, established by the modern decisions …." (*Brant v. California Dairies, Inc.*, *supra*, 4 Cal.2d at pp. 132–133.) Carver's testimony about his intention was in direct conflict with the plain meaning of the written language of the contract and was therefore inadmissible. (*Id*. at p. 133.) The court construed the contract according to the plain meaning of the terms used in the writings that constituted the contract. (*Ibid*.)

Here, the parties objectively manifested agreement to the contract by signing the writing prepared by plaintiff. In the contract, the parties agreed on the services plaintiff would render; in exchange, defendant would pay plaintiff "6.0 percent of the total amount

10.

collected under this Agreement." The trial court admitted extrinsic evidence concerning the intent of the parties in agreeing to the fee provision. It gave the language a reasonable construction, based on the contract terms and the extrinsic evidence. The trial court agreed with defendant's interpretation of the provision; it concluded the 6 percent applied to "the amount collected by [plaintiff] through her billing and collection efforts and [did] not include monies paid directly to [defendant] at the office that involved no action by [plaintiff]." The trial court found the contract's description of plaintiff's obligations supported this interpretation, because it contained nothing regarding plaintiff's involvement in "collection of cash, copays or deductibles that a patient paid at the time of the visit." The trial court then applied its interpretation of the fee provision and calculated the amount to which plaintiff was entitled under the contract.

Plaintiff's claim that, at the time the contract was executed, she subjectively intended the fee provision to mean something other than what it objectively appeared to mean is irrelevant to determining whether the contract was sufficiently certain for enforcement. Plaintiff objectively manifested agreement to the contract as written. The trial court construed the contract according to its objectively reasonable meaning.

As construed by the trial court, the contract was certain. There was no dispute the parties intended to create a contract; both parties believed they had a contract and sued to enforce it. The contract provided the basis for determining the existence of a breach: it set out the services plaintiff was obligated to perform, and the fees defendant was obligated to pay, in terms definite enough they could be understood and applied. The trial court was able to construe the alleged ambiguity in the fee provision, based on the objectively reasonable meaning of the words used. The contract was also certain enough for the trial court to provide an appropriate remedy for the breach: it was able to calculate the amount of damages to which plaintiff was entitled based on the unpaid fees.

"Whether a contract is certain enough to be enforced is a question of law for the court." (*Patel v. Liebermensch* (2008) 45 Cal.4th 344, 348, fn. 1.) Accepting the facts as

11.

found by the trial court, we conclude the contract was certain enough to be valid and enforceable.  The promises made by the parties were contained in a written contract.  They were not so vague and amorphous as to defy reasonable interpretation and application, like those in *Ladas*.  The trial court was able to interpret them according to their reasonable meaning.  As so interpreted, the contract was sufficiently certain to enable a court to determine breach and damages.  Because the trial court determined facts that established all elements of plaintiff's breach of contract cause of action, we conclude it erred in determining that plaintiff failed to prove that cause of action.

## II.    Open Book Account

Defendant challenges the judgment in favor of plaintiff on an open book account.  It asserts the judgment is improper because the first amended complaint, the operative pleading at the time of trial, did not contain such a cause of action, even though the original complaint did.  In its statement of decision, the trial court stated:  "Plaintiff asserts causes of action against Defendants for breach of contract, open book account, account stated and violation of Business and Professions Code § 17200, et seq."  It appears the trial court mistakenly looked to the original complaint to determine the causes of action in issue, rather than the first amended complaint.

"[A]n amended complaint supersedes all prior complaints.  [Citations.]  The amended complaint furnishes the sole basis for the cause of action, and the original complaint ceases to have any effect either as a pleading or as a basis for judgment."  (*State Compensation Ins. Fund v. Superior Court* (2010) 184 Cal.App.4th 1124, 1130–1131.)  "It is elementary that a party cannot recover on a cause of action not in the complaint."  (*Griffin Dewatering Corp. v. Northern Ins. Co. of New York* (2009) 176 Cal.App.4th 172, 179.)  A plaintiff must recover, if at all, on the cause of action alleged in the complaint, not on some other cause of action disclosed by the evidence.  (*Ibid.*; *Tri-Delta Engineering, Inc. v. Insurance Co. of North America* (1978)

12.

80 Cal.App.3d 752, 760.)  " 'A judgment that goes beyond the issues litigated is void insofar as it exceeds those issues.' " (*People v. Toomey* (1985) 157 Cal.App.3d 1, 11.)

A trial court, however, has discretion to permit amendment of a pleading in furtherance of justice, even during trial.  (*Garcia v. Roberts* (2009) 173 Cal.App.4th 900, 909.)  Generally, in determining whether to grant leave to amend during trial, the trial court considers:  "(1) whether facts or legal theories are being changed and (2) whether the opposing party will be prejudiced by the proposed amendment." (*City of Stanton v. Cox* (1989) 207 Cal.App.3d 1557, 1563.)  The trial court may also consider the moving party's diligence, and whether the amendment was requested after a long, unexplained delay.  (*Duchrow v. Forrest* (2013) 215 Cal.App.4th 1359, 1377.)  The trial court's decision regarding whether to allow an amendment to conform to the proof is reviewed for abuse of discretion.  (*Id.* at p. 1378.)

The minute orders reflecting the proceedings at trial do not contain any indication the trial court granted a motion to amend to conform to proof, and plaintiff does not contend it did.  Instead, plaintiff asks that the trial court's decision on an open book account "should be viewed in the same fashion as the amendment of a lawsuit during trial."  We decline to do so.  The operative first amended complaint did not allege a cause of action on an open book account.  Plaintiff seems to acknowledge she made no motion to amend to conform to proof.  There is no indication the trial court exercised its discretion to permit or deny amendment.  There is no indication it considered the relevant factors and exercised its discretion to allow amendment.  Rather, it appears the trial court mistakenly believed an open book account was already alleged in the operative first amended complaint.

Under these circumstances, plaintiff was limited to recovery on the causes of action alleged in the first amended complaint.  An open book account was not alleged in that pleading.  Consequently, the judgment on the open book account cause of action is void because it was in excess of the issues before the trial court.

## DISPOSITION

The judgment is reversed with directions to the trial court to vacate the existing judgment and enter a new judgment in favor of plaintiff and against NMC (the only remaining defendant named in the first amended complaint) on the cause of action for breach of contract only, in accordance with the factual findings in the statement of decision.  The parties are to bear their own costs on appeal.


HILL, P.J.

WE CONCUR:


DETJEN, J.


SNAUFFER, J.

14.