Filed 6/28/21  Northwest Realty v. Greenberg CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| NORTHWEST REALTY, INC.<br><br>Plaintiff and Appellant,<br><br>v.<br><br>JOSHUA GREENBERG,<br><br>Defendant and Respondent. | B305368<br><br>(Los Angeles County Super. Ct. No. YC072372) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ramona G. See, Judge.  Affirmed.

Spierer, Woodward, Corbalis & Goldberg, Stephen B. Goldberg and Meighan E. Leon for Plaintiff and Appellant.

Law Offices of Brad Snyder, Bradley Allen Snyder and Patricia M. Bakst for Plaintiff and Respondent.

_____

Plaintiff and appellant Northwest Realty, Inc. (Northwest) appeals from a judgment entered following a successful summary judgment motion brought by defendant and respondent Joshua Greenberg.  Northwest sued Greenberg for an alleged breach of a contract to pay a commission on the sale of residential property.  The superior court granted the motion for summary judgment, concluding because Northwest was not a third party beneficiary it could not prevail on a contract claim for damages and the claim was barred by the statute of frauds.  We agree the statute of fraud bars the claim and affirm.

## BACKGROUND

### 1.    Lease Agreement and Addendum

In 2012, respondent Greenberg decided to lease his residential property in Manhattan Beach for a two-year term.  Greenberg signed the lease agreement as landlord on December 11, 2012.  Ryan and Cassidy McCarthy signed the agreement as tenants on the same date.  The agreement identified Re/Max Olson & Associates (Re/Max) as Greenberg's listing broker and Northwest as the McCarthys' leasing broker.  It also stated the respective brokers were not parties to the agreement.  The agreement was signed by Re/Max's agent, Collin Hicks, and by Northwest's agent, Alexandra Gauss.

The lease agreement was a preprinted form with boxes next to paragraphs to be checked if they applied to the contracting parties.  The paragraphs providing for a broker's commission to be paid by either the landlord or the tenants "[u]pon execution of this agreement" and "as specified in a separate written agreement" were unchecked, and no such separate agreements were executed.  One checked paragraph expressly incorporated the addendum into the lease agreement.

2

The sole provision for payment of a broker's commission was in the addendum to the lease agreement. Paragraph 5 of the addendum read: "Landlord shall give Tenant the right of first refusal to purchase the Property. If Landlord is going to accept an offer to purchase the Property from a 3rd party during the term of this Lease and any extension periods, the Landlord's agent and the Tenant's agent will each receive a commission of 2.5% (for a total of 5%) of the total purchase price at the close of escrow if the Tenant purchases the the [*sic*] Property from the Landlord" (paragraph 5). The addendum was signed by Greenberg and the McCarthys on December 11, 2012.

**2. Sale of the Residential Property**

On June 11, 2015, Greenberg transferred title of the residential property to his LLC, "9th Street MB, LLC." On April 26, 2017, 9th Street MB, LLC sold the property to the McCarthys.

**3. Complaint**

Northwest demanded Greenberg pay a commission on the sale of the residential property. Greenberg refused, and Northwest filed this action for breach of contract. Specifically, Northwest claimed it was entitled under paragraph 5 to receive from Greenberg a commission in the amount of $102,500, which was 2.5 percent of the purchase price, and Greenberg had breached the agreement by refusing to pay the commission.

**4. Summary Judgment Motion and Opposition**

Greenberg moved for summary judgment on the ground he was not a party to any contract with Northwest and thus Northwest could not prevail on the contract claim as a matter of law. Greenberg also asserted the claim was barred by the statute of frauds.

In opposing Greenberg's motion, Northwest argued the language of paragraph 5 and extrinsic evidence were sufficient to establish a triable issue of material fact as to whether Northwest was a third party beneficiary under the lease agreement and to satisfy the statute of frauds.

In his reply, Greenberg argued there was no showing paragraph 5 was drafted to expressly benefit Northwest.

Northwest and Greenberg each submitted extrinsic evidence.

**5.**      **Superior Court's Ruling and Entry of Judgment**

The superior court granted summary judgment on January 13, 2020, concluding Northwest was not a third party beneficiary under the lease agreement. The court also concluded the contract claim was barred by the statute of frauds for lack of specificity. Following its order, the court entered judgment on January 31, 2020. This appeal followed.

**DISCUSSION**

**1.**      **Standard of Review**

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286; *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.) The evidence must be viewed in the light most favorable to the nonmoving party. (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 703; *Schachter*, at p. 618.)

4

## 2. Statute of Frauds Bars the Contract Claim

In California, the statue of frauds generally provides that any contract to compensate a broker for procuring a purchaser or seller of real property or a lessor or lessee of real property for a period longer than one year is invalid unless that contract or note or some memorandum thereof is in writing and signed by the broker's client. (Civ. Code, § 1624, subd. (a)(4).) To satisfy the statute of frauds the writing must "identif[y] the subject of the parties' agreement, show[] that they made a contract, and state[] the essential contract terms with reasonable certainty." (*Sterling v. Taylor* (2007) 40 Cal.4th 757, 766.) "The writing need not memorialize the entire contract between the principal and broker [citations], and need not be signed by all parties to the real estate transaction [citation]. A memorandum summarizing the contract will suffice as long as it sets forth the fact of employment or authority to act. [Citations.] . . . Whether a writing is sufficient is a question of law we review de novo." (*Westside Estate Agency, Inc. v. Randall* (2016) 6 Cal.App.5th 317, 330.)

The lease agreement identified the contracting parties and clearly set forth their rights and obligations to each other. The contracting parties each signed the agreement and the addendum. The issue is whether these writings were sufficient to enforce Northwest's claim that Greenberg was required to pay Northwest a sales commission. To be sufficient, the required writing must also state, with reasonable certainty, " ' " 'the *terms and conditions of all the promises* constituting the contract and by whom and to whom the promises are made.' " ' " (*Rivers v. Beadle* (1960) 183 Cal.App.2d 691, 696; *Ferrara v. Silver* (1956) 138 Cal.App.2d 616, 618; see *In re Marriage of Shaban* (2001) 88 Cal.App.4th 398, 405–406.) As discussed, the lease agreement

5

did not mention either Greenberg's or the McCarthys' obligation to compensate Re/Max or Northwest. Paragraph 5 stated only that "the Landlord's agent and the Tenant's agent will each receive a commission of 2.5% (for a total of 5%) of the total purchase price at the close of escrow" if the tenants purchased the property. Focusing on paragraph 5, the superior court concluded it was unenforceable because "there is no specific language" designating Greenberg as the party to pay the commission. The court further concluded extrinsic evidence failed to remedy this deficiency.

Northwest does not dispute that Greenberg's designation as the party to pay the commission was an essential term to be stated with reasonable certainty. Nor does Northwest seriously dispute the superior court's conclusion that paragraph 5 is insufficient to overcome the statute of frauds. Instead, Northwest argues the extrinsic evidence it proffered at the hearing confirmed Greenberg's "agreement to pay Northwest the commission." Northwest's extrinsic evidence consisted of (1) the transcript of Greenberg's deposition, in which he testified that his assistant, Misty Austin, was authorized to make an agreement on his behalf; (2) a series of pre-sale e-mails between Northwest's agent Gauss (who drafted the lease agreement and addendum) and Austin, in which Austin agreed to Gauss's proposal to add paragraph 5 language "that says we would each receive a commission of 2.5% (a total of 5%) if the tenant buys the property"; (3) the deposition of Re/Max's agent Hicks, who testified he had Greenberg sign the lease listing agreement form in effect at the time, but could not recall discussing it with him, and Hicks never had a transaction in which the buyer paid the commission; (4) a blank unsigned copy of the lease listing

6

agreement form, which included a condition that the "[o]wner agrees to pay Broker if Tenant" acquires the property; and (5) Gauss's declaration stating, "There was no question that Greenberg would be responsible for the payment of any and all commissions."

Northwest proffered other evidence to which Greenberg successfully objected as not relevant: Paragraphs of the Multiple Listing Service (MLS) Rules and Regulations and the MLS lease listing for the residential property. The court also excluded portions of Gauss's declaration in which she explained the MLS lease listing showed Gauss's commission was 2.5 percent, the lease listing agreement form requires the owner to pay the broker's commission, and the MLS Rules and Regulations described how participating brokers are awarded compensation and commissions.

None of this evidence, excluded or not, helps Northwest, whose argument reflects a misperception of the statute of frauds. "[T]he writing requirement of the statute of frauds ' "serves only to prevent the contract from being unenforceable" [citation]; it does not necessarily establish the terms of the parties' contract.' [Citation.] Unlike the parol evidence rule, which 'determines the enforceable and incontrovertible terms of an integrated written agreement,' the statute of frauds 'merely serve[s] an evidentiary purpose.' " (*Sterling v. Taylor, supra*, 40 Cal.4th at p. 766.) Thus, extrinsic evidence purportedly showing that Greenberg "agreed to pay" the sales commission is not legally sufficient to satisfy the statute of frauds because his promise to pay the commission is missing from paragraph 5. Moreover, to consider any such extrinsic evidence would conflict with the integration clause in paragraph 43 of the lease agreement.

To be sure extrinsic evidence is admissible to resolve ambiguities in disputed essential terms. (*Sterling v. Taylor, supra,* 40 Cal.4th at p. 767.) However, the agreement must still provide the essential terms, and "it is clear that extrinsic evidence cannot *supply* those required terms." (*Ibid.*) The superior court properly determined paragraph 5 violated the statute of frauds and granted the motion for summary judgment.

## DISPOSITION

The judgment is affirmed. Greenberg is entitled to his costs on appeal.

LUI, P. J.

We concur:

CHAVEZ, J.

HOFFSTADT, J.